**KLESTADT & WINTERS, LLP**
570 Seventh Avenue, 17th Floor
New York, NY 10018
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Sean C. Southard
Fred Stevens
Lauren C. Kiss

*Counsel to Massapequa Union
   Free School District*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re                                                 :
                                                    :    Chapter 11
METRO AFFILIATES, INC., *et al.*,[1]       :
                                                      :    Case No. 13-13591 (SHL)
                       Debtors.    :
                                                     :    Jointly Administered
---------------------------------------------------------------x

**MOTION OF MASSAPEQUA UNION FREE SCHOOL DISTRICT FOR AN ORDER
(I) DIRECTING DEBTOR RAYBERN BUS SERVICE INC. TO DETERMINE BY A
DATE CERTAIN WHETHER TO ASSUME OR REJECT EXECUTORY CONTRACT,
AND (II) (A) DETERMINING THAT THE AUTOMATIC STAY DOES NOT
PRECLUDE PLACEMENT OF CONTINGENCY CONTRACTS FOR
TRANSPORTATION SERVICES REQUIRED AFTER DECEMBER 31, 2013 BASED
UPON THE DEBTOR'S INABILITY TO PERFORM AND PERMITTING
TERMINATION OF THE EXECUTORY CONTRACT, OR IN THE ALTERNATIVE
<u>(B) GRANTING RELIEF FROM THE AUTOMATIC STAY</u>**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number, are: 180 Jamaica Corp. (7630); Amboy Bus Co., Inc. (2369); Atlantic Escorts, Inc. (8870); Atlantic Express Coachways, Inc. (2867); Atlantic Express New England, Inc. (4060); Atlantic Express of California, Inc. (5595); Atlantic Express of Illinois, Inc. (5759); Atlantic Express of LA, Inc. (1639); Atlantic Express of Missouri, Inc. (3116); Atlantic Express of New Jersey, Inc. (8504); Atlantic Express of Pennsylvania, Inc. (0330); Atlantic Express Transportation Corp. (4567); Atlantic Queens Bus Corp. (0276); Atlantic Paratrans of NYC, Inc. (1114); Atlantic Paratrans, Inc. (3789); Atlantic Transit, Corp. (7142); Atlantic-Hudson, Inc. (5121); Block 7932, Inc. (3439); Brookfield Transit, Inc. (8247); Courtesy Bus Co., Inc. (5239); Fiore Bus Service, Inc. (1233); Groom Transportation, Inc. (7208); G.V.D. Leasing, Inc. (0595); James McCarty Limo Services, Inc. (8592); Jersey Business Land Co. Inc. (3850); K. Corr, Inc. (4233); Merit Transportation Corp. (8248); Metro Affiliates, Inc. (0142); Metropolitan Escort Service, Inc. (9197); Midway Leasing, Inc. (7793); R. Fiore Bus Service, Inc. (3609); Raybern Bus Service, Inc. (9412); Raybern Capital Corp. (6990); Raybern Equity Corp. (3830); Robert L. McCarthy & Son, Inc. (4617); Staten Island Bus, Inc. (6818); Temporary Transit Service, Inc. (0973); Atlantic Express of Upstate New York Inc. (1570); Transcomm, Inc. (4493); and Winsale, Inc. (2710).

TO:  THE HONORABLE SEAN H. LANE,
     UNITED STATES BANKRUPTCY JUDGE:

Massapequa Union Free School District ("Massapequa"), by and through its undersigned counsel, hereby moves this Court (the "Motion") for an order(s) (i) pursuant to 11 U.S.C. § 365(d) and Fed. R. Bankr. P. 6006 directing Raybern Bus Service Inc., a subsidiary of Atlantic Express Transportation Group ("Raybern" and, together with its affiliated debtors and debtors in possession, "Atlantic Express" or the "Debtors") to determine whether to assume or reject that certain transportation contract (the "Contract") with Massapequa on or before December 16, 2013 and (ii) pursuant to 11 U.S.C. §§ 105 and 362(d)(4) determining that the automatic stay does not preclude Massapequa from placing contingency contracts for transportation services required after December 31, 2013 and otherwise terminating the Contract based upon the Debtors' admitted inability to perform under the Contract with Massapequa, or in the alternative (b) pursuant to 11 U.S.C. § 362(d)(1) granting relief from the automatic stay to permit the same. In support of its Motion, Massapequa respectfully states as follows:

## PRELIMINARY STATEMENT

Massapequa has filed this Motion because of the Debtors' recent admissions concerning their inability to provide transportation services after December 31, 2013.  Massapequa has an obligation to provide transportation for children in its district to and from state mandated education and has an interest in protecting the health and safety of the minor students. Massapequa's consent is also required pursuant to section 365(c) with regard to any attempted assumption or assignment of the Contract by Raybern to any third party service provider. Massapequa is hopeful that a credible operator is available through the Debtors' pending sale process to take assignment of the Contract with the consent of Massapequa.  However, in light of the overall timing and circumstances and in order to ensure there is no disruption in

2

transportation services which Massapequa is obligated to provide, Massapequa seeks a determination of this Court either requiring Raybern to assume or reject the Contract by a date certain which will maximize the possibility that Massapequa can obtain alternative transportation services and thereby mitigate damages caused by the Debtor's anticipatory breach of the Contract (i.e., December 16, 2013), or otherwise confirm that Massapequa may place contingency contracts for transportation services required by Massapequa after December 31, 2013 and terminate the Contract so that it can continue to provide safe, effective, and reliable student transportation should the Debtors' sale process produce no acceptable counterparty to the Contract.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This Motion is a core proceeding pursuant to 28 U.S.C. § 157.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicate for the relief requested herein is sections 105, 362(b), 362(d) and 365(d)(2) of Title 11 of the United States Code (the "Bankruptcy Code").

## BACKGROUND

A.  Massapequa Union Free School District

2.     Massapequa Union Free School District is a public school district with its principal place of business located at 4925 Merrick Road, Massapequa, NY 11758.

3.     The Massapequa school district consists of six (6) elementary schools, one (1) middle school, and two (2) high schools, totaling nine (9) schools.  Massapequa does not own its own fleet of buses and vans and cannot independently provide for required student transportation.  Raybern provides transportation for four (4) of the elementary schools, the

middle school and the two (2) high schools, in addition to providing transportation to certain students residing in the Massapequa school district who attend certain private schools. In total, Raybern provides transportation to approximately 2,400 students in the Massapequa school district. See Declaration of Alan Adcock, dated December 5, 2013, in support of this Motion, attached hereto as Exhibit A (the "Adcock Declaration"), ¶ 8.

B. The Contract

4. The Contract at issue by and between Massapequa and Raybern is a multiple five (5) year extension of a transportation contract, effective July 1, 2010 through June 30, 2015. See id., ¶ 10. A copy of the Contract is attached hereto as Exhibit B.

C. The Bankruptcy

5. On November 4, 2013 (the "Petition Date"), Raybern and the other Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code.

6. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108 of the Bankruptcy Code.

7. No Trustee or Examiner has been appointed herein.

8. On November 13, 2013, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") in these jointly administered chapter 11 cases (the "Chapter 11 Cases").

9. While Raybern has performed to date, the Debtors consistent message in pleadings filed and arguments made to this Court all indicate that as of December, 31, 2013, the Debtors will be unable to perform the transportation services provided for in the Contract. See Declaration of Neil A. Augustine, dated November 19, 2013, ¶ 7 [Docket No. 101] ("The cash flow forecast shows that the Debtors will exhaust their liquidity, including available DIP

4

Financing, by the end of December.  The Debtors do not have sufficient liquidity to continue all of their operations beyond the end of the year.").

10. Indeed, in conversations between representatives of Massapequa and the Debtors, the inability to provide transportation services beyond the end of this year has been made clear. See Adcock Declaration, ¶ 11.

11. It is undisputed that because of this liquidity crisis and inability to service debt, the Debtors have filed a motion seeking this Court's approval to sell substantially all of their assets to the highest and best bidder (the "Sale Motion") [Docket No. 19].

12. Further, the Debtors have sought and recently obtained approval of debtor-in-possession financing (the "DIP Credit Facility").  According to the Debtor's motion to approve the DIP Credit Facility (the "DIP Motion") [Docket No. 16], the available financing has a stated maturity date of December 31, 2013.  See DIP Motion, p. 13.  Additionally, the Budget attached to the DIP Motion suggests that the Debtors will not be operational in 2014, as the only projected expenses in 2014 are professional fees.  See DIP Motion, Exhibit C.

13. Taken together, these statements constitute admissions of the Debtors' inability to perform under the Contract beyond December 31, 2013 and constitute an anticipatory breach of the Contract permitting its termination under applicable state law.

### RELIEF REQUESTED

14. By this Motion and within this backdrop, Massapequa seeks to compel Raybern to assume and assign or reject the Contract by December 16, 2013.  Additionally, Massapequa seeks a determination that the automatic stay does either not preclude, or should otherwise be modified to permit, termination of the Contract and placement of contingency contracts for

5

transportation after December 31, 2013 given Raybern's admitted inability to perform these services for Massapequa under the Contract.

15. To be clear, Massapequa is hopeful that the Debtors' sale efforts bear fruit in the form of a credible operator willing to assume Massapequa's Contract. However, Massapequa must be able to take necessary and timely action to protect its rights and the rights of the students it serves in the event that the Debtors' sale is unsuccessful.

**BASIS FOR RELIEF REQUESTED**

**I.    Order Directing Raybern to Assume and Assign or Reject Contract.**

16. Section 365(d)(2) of the Bankruptcy Code provides that the debtor-in-possession

> may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan but the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

11 U.S.C. § 365(d)(2).

17. This Court may determine, within its broad discretion, what constitutes a reasonable time for a debtor to decide whether to assume or reject a contract, based upon the particular facts of the case. "What constitutes a reasonable time is left to the bankruptcy court's discretion in the light of the circumstances of each case." In re Hawker Beechcraft, Inc., 483 B.R. 424, 429 (Bankr. S.D.N.Y. 2012) (citations omitted). Among the factors courts have considered in applying this discretion are:

> (1) [T]he nature of the interests at stake; (2) the balance of the harm to the litigants; (3) the good to be achieved; (4) the safeguards afforded to the litigants; (5) whether the action to be taken is so in derogation of Congress' scheme that the court may be said to be arbitrary; (6) the debtor's failure or ability to satisfy post-petition obligations; (7) the damage that the non-debtor will suffer beyond the compensation available under the Bankruptcy Code; (8) the importance of the contract to the debtor's business and reorganization; (9) whether the debtor has sufficient time to appraise its financial situation and the potential value of its assets in formulating a plan of reorganization; (10) whether there is a need for

>judicial determination as to whether an executory contract exists; (11) whether exclusivity has been terminated; and (12) above all, the broad purpose of Chapter 11, which is to permit successful rehabilitation of debtors.

Id. citing In re Adelphia Comm. Corp., 291 B.R. 283, 293 (Bankr. S.D.N.Y. 2003).

18.    The following factors mandate that a decision to assume and assign or reject should be required shortly after conclusion of the sale approval hearing on December 16, 2013 (the "Sale Approval Hearing").

### a. **The Nature of the Interests at Stake.**

19.    Raybern's interest under the Contract with Massapequa is merely monetary. Raybern's ability to preserve its determination right to assume and assign the Contract allows it to maximize value for its estate provided Raybern has an ability to perform and thereby preserve rights under the Contract. Massapequa's interest to be protected under the Contract relates to the health and safety of minor students who must be transported to and from state mandated education. Massapequa asserts that its interest under the Contract outweighs the monetary interests which Raybern seeks to protect.

### b. **The Balance of the Harm to the Litigants**.

20.    Should the Debtors' sale process produce no acceptable counterparty to the Contract or the Debtor's determination rights be unduly extended past the December 16, 2013, Massapequa will face significant harm as it may be unable to obtain alternative transportation services for its students beyond December 31, 2013 when Raybern has stated it can no longer perform. The Debtors expect to liquidate their businesses to the extent not sold before December 31, 2013. Determining whether to assume or reject the Contract is a simple and easy decision to make immediately following the Sale Approval Hearing when the fate of its remaining

7

operations is already pre-determined.[2] Leaving counterparties in a state of unnecessary limbo following the Sale Approval Hearing is simply punitive and will exacerbate injury and associated damages for counterparties like Massapequa.

      c. **The Good to be Achieved**.

21. If Massapequa is granted the relief requested, Massapequa will be able to ensure safe, reliable, efficient school transportation when the students return to school after the upcoming holiday break. Raybern can achieve no discernable good by opposing the relief sought by this Motion in light of its intention to liquidate.

      d. **The Safeguards Afforded to the Litigants.**

22. If no bidder seeks to purchase the Contract and the same is later rejected or Raybern fails to perform, Massapequa will have a claim for various damages. Rejection damage claims are treated as unsecured prepetition claims. 11 U.S.C. § 365 (g). The right to file an unsecured claim in a case involving under-secured lien holders, does not protect adequately Massapequa's interest in the Contract or afford it any safeguard in its legal obligation to provide student transportation.

      e. **Whether the Action to be Taken is So in Derogation of Congress' Scheme that the Court may be said to be Arbitrary.**

23. Raybern's refusal to agree to assume or reject the Contract soon after the Sale Approval Hearing is seemingly without justification and Massapequa would argue is arbitrary and punitive.

---

[2] Prior to filing this Motion, Massapequa sought the agreement of the Debtors concerning their willingness to promptly reject the Contract following the Sale Approval Hearing and the request was denied without adequate justification.

8

    f. **The Debtor's Failure or Ability to Satisfy Post-Petition Obligations.**

24. Raybern has admitted that it is unable to provide transportation services beyond December 31, 2013 given the Debtors' dire financial condition, the anticipated sale of substantially all assets, and shutdown of remaining operations. As such, Massapequa requires protection from the Debtors' admitted inability to perform.

    g. **The Damage that the Non-Debtor will Suffer Beyond the Compensation Available under the Bankruptcy Code.**

25. The potential disruption in transportation services which Massapequa is obligated to provide for students within its district would prove damaging to both students and parents residing in the Massapequa district. In addition, such a disruption would potentially place Massapequa in violation of various requirements under applicable state and local law. The uncertainty created by the Debtor's bankruptcy filing and the looming inability to provide transportation creates an untenable situation for Massapequa that may only be alleviated by the prompt determination on assumption or rejection of the Contract. The right to file a claim for damages in these cases will be of little comfort to Massapequa.

    h. **The Importance of the Contract to the Debtor's Business and Reorganization.**

26. There is no evidence that the Contract is required for an effective reorganization, particularly when Massapequa's consent is required pursuant to section 365(c) with regard to any attempted assumption or assignment of the Contract by the Debtors to any third party service provider. That general proposition aside, there is no justification for Raybern to hold open the Contract with Massapequa following the Sale Approval Hearing given its clear intent to liquidate.

      i. **Whether the Debtor has Sufficient Time to Appraise its Financial Situation and the Potential Value of its Assets in Formulating a Plan of Reorganization.**

27.     The Debtors have already made the determination that if they are unable to sell their assets as an ongoing operation that they will liquidate. Raybern is unable to perform under the Contract beyond December 31, 2013 and has clearly stated this position. As such, Raybern does not require time beyond the Sale Approval Hearing to further appraise its financial situation and the potential value of its assets. Indeed the sale process is establishing valuation matters and no plan of reorganization is even contemplated.

      j. **Whether there is a Need for Judicial Determination as to Whether an Executory Contract Exists.**

28.     There is no doubt or serious dispute that the Contract amounts to an executory contract to be treated in accordance with section 365 of the Bankruptcy Code. The Debtors have admitted the same and acknowledged all school districts' rights in accordance with section 365(c).

      k. **Whether Exclusivity has been Terminated**.

29.     Exclusivity has not been terminated, but no reorganization is contemplated beyond the sale process sought under section 363 of the Bankruptcy Code.

      l. **The Broad Purpose of Chapter 11, which is to Permit Successful Rehabilitation of Debtors.**

30.     The only reorganization contemplated here is a sale accomplished outside of a plan. Requiring Raybern to assume or reject the Contract after the Sale Approval Hearing concludes does not frustrate this purpose and serves to minimize claims for damages to be lodged against the Debtors' estates.

31.    The foregoing factors to be considered by this Court all point to the conclusion that this Court should require Raybern to make a determination to assume or reject the Contract no later than immediately following the Sale Approval Hearing set for December 16, 2013.

II.    **Determination that Automatic Stay Does Not Bar Termination of Contract, or in the Alternative, Granting Relief from the Automatic Stay.**

32.    The Bankruptcy Code provides that the filing of a bankruptcy petition "operates as stay, applicable to all entities" of any act to exercise control over the property of the estate. 11 U.S.C. § 362(a)(3).   However, section 362(d) of the Bankruptcy Code provides several exceptions to the automatic stay, including actions by a governmental unit to enforce its police or regulatory powers.  11 U.S.C. § 362(b)(4).[3]  The legislative history indicates that "where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such law, the action or proceeding is not stayed under the automatic stay." H.R.Rep. No. 595, 95th Cong., 1st Sess. 343 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6299, S.Rep. No. 989, 95th Cong., 2d Sess. 52 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5838.

33.    Courts have developed a twofold analysis to determine whether the governmental unit's action is within the scope of the exception. See In re Pollack, 402 B.R. 534, 536 (N.D.N.Y. 2009) (explaining that governmental unit must satisfy one of these tests).  First, the pecuniary purpose test asks whether the government action relates primarily to the protection of

---

[3] Section 362(b)(4) provides for the following:

> The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Protection Act of 1970, does not operate as a stay . . . (4) under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's or organization's police or regulatory power, including the enforcement of a judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power.

11

the government's pecuniary interest in the debtor's property or to matters relating to public safety; if the proceeding relates primarily to matters of public safety, it is excepted from the stay. See In re Ngan Restaurant, Inc., 183 B.R. 689, 691 (Bankr. S.D.N.Y. 1995). Second, the public policy test asks whether the proceeding is effectuating public policy or adjudicating private rights. Id. Proceedings that effectuate public policy fall within the exception to the automatic stay. Id.

34.    A governmental unit is defined by the Bankruptcy Code to include government at the federal, state and local levels, and includes a government department, agency or instrumentality. 11 U.S.C. § 101(27). Massapequa fits the definition of a governmental unit because it works under the rules and regulations of the New York State Education Department as a public school district.

35.    In light of Raybern's admission that it cannot perform under the Contract beyond December 31, 2013, Massapequa's decision to terminate the Contract and simultaneously seek bids for contingency or replacement contracts for transportation services required after December 31, 2013 fits within the police powers exception under section 362(b)(4) because such actions satisfy both the pecuniary interest and public policy tests. The purpose of terminating the Contract and seeking bids is to ensure that Massapequa is able to provide safe, effective, and reliable transportation for its students after December 31, 2013. Massapequa's interest is in protecting the health and safety of minor students to and from state mandated education. This action satisfies the pecuniary purpose test because the action relates to public safety and welfare. Similarly, this action satisfies the public policy test because the action is effectuating public policy by ensuring that Massapequa fulfils its legal obligation to provide transportation to children who reside in the district.

36. Alternatively, if the Court finds the exception set forth in 362(b)(4) inapplicable, Massapequa respectfully requests that the Court grant it relief from the automatic stay in order to permit Massapequa to exercise all rights, including not limited to, termination of the Contract.

37. Section 362(d) provides several grounds for relief from the automatic stay, including "for cause." 11 U.S.C. § 362(d)(1). Specifically, section 362(d)(1) of the Bankruptcy Code provides, in pertinent part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating annulling, modifying or conditioning such stay … for cause, including the lack of adequate protection of an interest in property of such party in interest.

11 U.S.C. § 362(d)(1).

38. As the movant, Massapequa has the burden of proving cause for lifting the automatic stay. See Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1285 (2d Cir. 1990). Once cause is shown to exist, the debtor must prove that it is entitled to the protections afforded by the automatic stay. Id.

39. "The Bankruptcy Code does not, however, define the phrase 'for cause,' but the courts recognize it as a broad and flexible concept that must be determined on a case-by-case basis." In re AMR Corp., 485 B.R. 279, 295 (Bankr. S.D.N.Y. 2013). When analyzing whether to lift the say, courts may balance the harm to the debtor against the harm to the creditor from a continuation of the stay. See In re 360 Networks (USA) Inc., 282 B.R. 756, 764 (Bankr. S.D.N.Y. 2001).

40. Court have found "cause" in cases where the movant's ultimate objective was to terminate the license or contract at issue. See In re M.J. & K. Co., Inc., 161 B.R. 586 (Bankr. S.D.N.Y. 1993) (law school entitled to relief from stay to serve notice to remove debtor from

13

premises on which debtor operated law school bookstore where debtor was unable to prove that it could provide needed textbooks for the next school semester). See also In re Planet Hollywood, Int'l, Inc., No. 99-3612, 2000 WL 36118317, at *10 (D. Del. Nov. 21, 2000) (granting non-debtor party to executory contract relief from automatic stay where contract could not be assumed under section 365(c)(1) of the Bankruptcy Code); In re Quinones Ruiz, 98 B.R. 636 (Bankr. D. Puerto Rico 1988) (finding debtors' commingling of gasoline constituted noncurable breach of franchise agreement, thus warranting lifting of automatic stay to terminate agreement).

41.   On the instant facts related to the Contract between Raybern and Massapequa (and as set forth extensively hereinabove), the balance of harm to Raybern is minimal compared to the significant harm Massapequa faces if it is unable to provide transportation for its students beyond December 31, 2013.

42.   Raybern has admitted it's unable to perform under the Contract beyond December 31, 2013 and the same amounts to anticipatory breach under applicable state law. See In re Food Mgmt. Group, LLC, 372 B.R. 171, 189 (Bankr. S.D.N.Y. 2007) ("Under New York law a party to a contract commits an anticipatory breach of the contract when, prior to the time set for performance under the contract, it declares expressly or by its conduct that it will not perform its part of the bargain."). See also In re Brown Publ'g Co., 486 B.R. 46, 54 (Bankr. E.D.N.Y. 2013) (explaining party to have committed repudiation must declare intention not to perform ahead of or prior to time set for performance).

43.   Clear harm will occur to Massapequa and the students and parents within its district unless Massapequa is permitted to terminate the Contract and make provision for alternative transportation services needed after December 31, 2013.   These circumstances

provide this Court with abundant "cause" to modify the automatic stay and permit Massapequa to protect these important interests of the public that it serves.

44. Additionally, it is worth noting that this Court's Order dated November 22, 2013 pursuant to 11 U.S.C. §§ 105, 363, 365, 365, 503 and 507 and Rules 202, 4001, 6004, 6006, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (1) Approving (A) Bid Procedures, (B) Notice of Sale, Auction, and Sale Hearing, and (C) Assumption Procedures and Related Notices and (II) Scheduling Sale Hearing (the "Sale Procedures Order") [Docket No. 122] makes clear that school districts like Massapequa have unassailable rights to consent in accordance with Section 365(c) of the Bankruptcy Code.[4]  As such, the Debtor's property interest in the Contract is further circumscribed on account of Massapequa's ability to block any assignment to a counterparty it finds unacceptable.

45. Well within its equitable discretion then, this Court could balance the equities and condition stay relief in favor of Massapequa so that it simultaneously protects Raybern and its limited interests in the Contract through the conclusion of the Sale Approval Hearing, at which point, this Court might then permit modification of the stay so that Massapequa may take actions to protect its more pressing interests.

46. A further ground for lifting the automatic stay on the request of a creditor involves a situation where the debtor has no equity in the property the creditor is seeking to reach and the property is not necessary for the effective reorganization of the debtor. 11 U.S.C. § 362(d)(2). After the Sale Approval Hearing, Raybern has no intention to reorganize and has no ability to perform under the Contract and thereby avoid its own material breach under the

---

[4] In relevant part, page 8 of the Sale Procedures Order provides that "[f]or the avoidance of doubt, the consent of any school board or department of education, including, without limitation, the City of New York, the New York City Department of Education and the New York City Economic Development Corporation, is required under Bankruptcy Code sections 365(c) and (e) to the extent the Debtors seek to assume and assign as part of the Sale process any contract to which such entity, school board or department of education is a party."

Contract. As such, the Contract and the Debtor's rights under the same cannot be viewed as necessary to an effective reorganization.

47.     For the foregoing reasons, Massapequa is entitled to determination that the automatic stay either does not apply to its actions with regard to the Contract. In the alternative, Massapequa is entitled to relief from or modification to the automatic stay for the foregoing reasons no later than conclusion of the Sale Approval Hearing.

## No Previous Application

48.     No previous application for the relief sought herein has been made to this or any other court.

**WHEREFORE**, Massapequa respectfully requests that this Court enter an order, substantially in the form of the proposed order attached hereto as <u>Exhibit C</u>, granting the relief requested herein and such further relief as this Court deems just and equitable.

Dated: New York, New York
December 5, 2013

                                        KLESTADT & WINTERS, LLP

                                        By: */s/ Sean C. Southard*
                                               Sean C. Southard
                                               Fred Stevens
                                               Lauren C. Kiss
                                      570 Seventh Avenue, 17th Floor
                                      New York, New York 10018
                                      Tel:  (212) 972-3000
                                      Fax:  (212) 972-2245

                                      *Counsel to Massapequa Union*
                                      *Free School District*