UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

In re:

METRO AFFILIATES, INC., *et al.*,

                       Debtors.[1]

------------------------------------------------------------- X

Chapter 11
Case No. 13-13591 (SHL)

Jointly Administered


# MEMORANDUM OF LAW (A) IN SUPPORT OF CONFIRMATION OF FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION FOR METRO AFFILIATES, INC. AND ITS AFFILIATED DEBTORS PROPOSED BY THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND (B) IN RESPONSE TO OBJECTIONS TO CONFIRMATION

Dated: June 6, 2014

| | |
|---|---|
| AKIN GUMP STRAUSS<br>  HAUER & FELD LLP<br>Lisa G. Beckerman<br>Rachel Ehrlich Albanese<br>One Bryant Park<br>New York, New York 10036<br>Tel:    (212) 872-1000<br>Fax:   (212) 872-1002<br><br>*Counsel to the Debtors and*<br>*Debtors in Possession* | FARRELL FRITZ, P.C.<br>Ted A. Berkowitz<br>Patrick T. Collins<br>Veronique A. Urban<br>1320 RXR Plaza<br>Uniondale, New York 11556<br>Tel:    (516) 227-0700<br>Fax:   (516) 227-0777<br><br>*Counsel to the Official Committee of*<br>*Unsecured Creditors* |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number, are: 180 Jamaica Corp. (7630); Amboy Bus Co., Inc. (2369); Atlantic Escorts, Inc. (8870); Atlantic Express Coachways, Inc. (2867); Atlantic Express New England, Inc. (4060); Atlantic Express of California, Inc. (5595); Atlantic Express of Illinois, Inc. (5759); Atlantic Express of LA, Inc. (1639); Atlantic Express of Missouri, Inc. (3116); Atlantic Express of New Jersey, Inc. (8504); Atlantic Express of Pennsylvania, Inc. (0330); Atlantic Express Transportation Corp. (4567); Atlantic Queens Bus Corp. (0276); Atlantic Paratrans of NYC, Inc. (1114); Atlantic Paratrans, Inc. (3789); Atlantic Transit, Corp. (7142); Atlantic-Hudson, Inc. (5121); Block 7932, Inc. (3439); Brookfield Transit, Inc. (8247); Courtesy Bus Co., Inc. (5239); Fiore Bus Service, Inc. (1233); Groom Transportation, Inc. (7208); G.V.D. Leasing, Inc. (0595); James McCarty Limo Services, Inc. (8592); Jersey Business Land Co. Inc. (3850); K. Corr, Inc. (4233); Merit Transportation Corp. (8248); Metro Affiliates, Inc. (0142); Metropolitan Escort Service, Inc. (9197); Midway Leasing, Inc. (7793); R. Fiore Bus Service, Inc. (3609); Raybern Bus Service, Inc. (9412); Raybern Capital Corp. (6990); Raybern Equity Corp. (3830); Robert L. McCarthy & Son, Inc. (4617); Staten Island Bus, Inc. (6818); Temporary Transit Service, Inc. (0973); Atlantic Express of Upstate New York Inc. (1570); Transcomm, Inc. (4493); and Winsale, Inc. (2710).

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................iv

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF FACTS ....................................................................................................2

REQUEST FOR JUDICIAL NOTICE .................................................................................2

ARGUMENT .........................................................................................................................3

I.     THE PLAN COMPLIES WITH THE CONFIRMATION STANDARDS
SET FORTH IN SECTION 1129 OF THE BANKRUPTCY CODE ...................................3

     A.     The Plan Complies With The Applicable Provisions
Of Title 11 –Section 1129(a)(1)....................................................................3

          1.     The Plan Complies with the Requirements of Section 11223 ......................3

          2.     The Plan Complies with the Requirements of Section 1123(a)....................4

               i.     The Plan Designates Classes of Claims And Interests –
11 U.S.C. § 1123(a)(1) .........................................................................4

               ii.     The Plan Specifies Unimpaired Classes –
11 U.S.C. § 1123(a)(2) .........................................................................5

               iii.     The Plan Adequately Specifies The Treatment
Of Impaired Classes – 11 U.S.C. § 1123(a)(3) ...................................5

               iv.     The Plan Provides the Same Treatment For
Claims Or Interests Within Each Class –
11 U.S.C. § 1123(a)(4) .........................................................................5

               v.     The Plan Provides Adequate Means For Its Implementation –
11 U.S.C. § 1123(a)(5) .........................................................................6

               vi.     The Plan Does Not Provide For the Issuance
of Non-Voting Equity Securities –
11 U.S.C. § 1123(a)(6) .........................................................................6

vii.    The Plan Contains Appropriate Provisions Respecting The Selection Of Post-Confirmation Directors And Officers – 11 U.S.C. § 1123(a)(7) ........................................................................7

3.    The Plan Complies With The Requirements Of Section 1123(b)..................8

4.    Section 1123(d) And Bankruptcy Rule 3016(a) ...........................................9

B.    The Plan Proponents Have Complied With The Provisions Of Title 11 – Section 1129(a)(2) ...................................................................9

1.    The Plan Proponents' Compliance With Section 1125 of the Bankruptcy Code ...............................................................9

2.    The Plan Proponents' Compliance With Section 1126 of the Bankruptcy Code ..............................................................11

C.    The Plan Has Been Proposed In Good Faith And Not By Any Means Forbidden By Law – Section 1129(a)(3)........................................12

D.    The Plan Provides For Bankruptcy Court Approval Of Payment For Services And Expenses – 11 U.S.C. § 1129(a)(4)................................14

E.    The Plan Proponents Have Disclosed All Necessary Information Regarding Officers And Directors – Section 1129(a)(5)..........................14

F.    The Plan Does Not Contain Rate Changes Subject To The Jurisdiction Of Any Governmental Regulatory Commission – 11 U.S.C. § 1129(a)(6)..............................................................................15

G.    The Plan Is In the Best Interests Of Creditors – 11 U.S.C. § 1129(a)(7)..............................................................................15

H.    Not All Impaired Classes Have Accepted The Plan – Section 1129(a)(8) ...............................................................................16

I.    The Plan Provides For Payment In Full of All Allowed Priority Claims – 11 U.S.C. § 1129(a)(9) ..................................................18

J.    The Plan Has Been Accepted By At Least One Impaired Class Of Claims That Is Entitled To Vote – 11 U.S.C. § 1129(a)(10)................................23

K.    The Plan Is Feasible – 11 U.S.C. § 1129(a)(11) ........................................23

L.      The Plan Provides For Full Payment Of All Allowed Priority
Claims – 11 U.S.C. § 1129(a)(9) ...............................................................25

M.     The Plan Provides For The Continuance Of Retiree Benefit
Obligations – 11 U.S.C.§ 1129(a)(13) ......................................................26

N.     The Debtors Have No Domestic Support Obligations,
Are Not Individuals And Are Not Nonprofit Entities –
11 U.S.C. §§ 1129(a)(14), (15) & (16) ....................................................26

O.     The Plan Satisfies The Cram-Down Requirements –
11 U.S.C. § 1129(b) ..................................................................................27

     1.     The Plan Does Not Discriminate Unfairly Against Any Class .....................26

     2.     The Plan is Fair and Equitable ....................................................26

P.     The Plan Is The Only Plan Filed In
The Chapter 11 Cases – 11 U.S.C. § 1129(c) ...........................................29

Q.     The Principal Purpose Of The Plan Is Not To Avoid Taxes
Or Section 5 Of The Securities Act – 11 U.S.C. § 1129(d) .......................29

II.     THE ASSUMPTION AND ASSIGNMENT OR REJECTION OF
THE EXECUTORY CONTRACTS AND UNEXPIRED LEASES
UNDER THE PLAN SHOULD BE APPROVED ...............................................29

III.     THE SUBSTANTIVE CONSOLIDATION OF THE DEBTORS
BENEFITS CREDITORS AND SHOULD BE APPROVED ...............................31

IV.     THE PLAN RELEASES, EXCULPATIONS AND INJUNCTIONS
ARE APPROPRIATE AND CONSISTENT WITH ESTABLISHED PRECEDENT .........35

A.     The Releases Are Proper ............................................................35

B.     The Exculpation Provisions Are Proper. ...................................39

V.     ALL OBJECTIONS TO THE PLAN HAVE BEEN RESOLVED .......................43

CONCLUSION ........................................................................................48

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*ACC Bondholder Group v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*,
361 B.R. 337 (S.D.N.Y. 2007) ................................................................................15

*Bank of Am. Nat'l Trust & Savs. Ass'n v. 203 N. LaSalle St. P'Ship*,
526 U.S. 434 (1999) ....................................................................................15, 28

*Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*,
416 F.3d 136 (2d Cir. 2005) .................................................................................37

*In re 599 Consumer Elecs., Inc.*,
195 B.R. 244 (S.D.N.Y. 1996) ..............................................................................32

*In re Adelphia Commn'cs Corp.*,
368 B.R. 140 (Bankr. S.D.N.Y. 2007) ....................................................................37

*In re AMR Corp.*, Case No. 11-15463 (SHL) (Bankr. S.D.N.Y. Oct. 22, 2013) .........................40

*In re Armstrong World Indus., Inc.*,
348 B.R. 111 (D. Del. 2006) .................................................................................27

*In re BearingPoint, Inc.*,
Case No. 09- 10691 (REG) (Bankr. S.D.N.Y. Dec. 22, 2009) ................................41

*In re Buttonwood Partners, Ltd.*,
111 B.R. 57 (Bankr. S.D.N.Y. 1990) .....................................................................27

*In re Calpine Corp.*,
2007 Bankr. LEXIS 4390 (Bankr. S.D.N.Y. Dec. 19, 2007)............................32, 38

*In re Cellular Info Sys., Inc.*,
171 B.R. 926 (Bankr. S.D.N.Y. 1994) ...................................................................13

*In re CIT Group Inc.*,
Case No. 09-16565 (ALG), 2009 Bankr. LEXIS 4026 (Bankr. S.D.N.Y. Dec. 8, 2009)............
........................................................................................................................36, 40

*In re Crowthers McCall Pattern, Inc.*,
120 B.R. 279 (Bankr. S.D.N.Y. 1990) ...................................................................16

*In re Dana Corp.*,
No. 06-10354 2007 Bankr. LEXIS 4404 (Bankr. S.D.N.Y. Dec. 26, 2007) .........................40

iv

*In re Delphi Corp.*,
    No. 05-44481, 2009 Bankr. LEXIS 4663 (Bankr. S.D.N.Y. July 30, 2009) ..........................40

*In re Drexel Burnham Lambert Group*,
    138 B.R. 723 (Bankr. S.D.N.Y. 1992) ...................................................................................15

*In re Eagle-Picher Indus.*,
    203 B.R. 256 (Bankr. S.D. Ohio 1996).................................................................................13

*In re Gucci*,
    193 B.R. 411 (S.D.N.Y. 1996)..............................................................................................30

*In re Johns-Manville Corp.*,
    68 B.R. 618 (Bankr. S.D.N.Y. 1986), *aff'd in part, rev'd in part on other grounds*,
    78 B.R. 407 (S.D.N.Y. 1987)................................................................................3, 9, 14, 27

*In re Leslie Fay Cos.*,
    207 B.R 764 (Bankr. S.D.N.Y. 1997). ............................................................................13, 33

*In re Mark IV Indus., Inc.*,
    Case No. 09-12795 (SMB) (Bankr. S.D.N.Y. Sept. 23, 2009) .................................................41

*In re Mesa Air Group, Inc.*,
    Case No. 10-10018 (MG), 2011 Bankr. LEXIS 189 (Bankr. S.D.N.Y. Jan. 20, 2011)..........36

*In re Old Carco LLC*,
    2010 Bankr. LEXIS 5711 (Bankr. S.D.N.Y. Apr. 23, 2010)............................................12, 13

*In re Oldco M Corp.*,
    Case No. 09-13412, 2010 Bankr. LEXIS 2372 (Bankr. S.D.N.Y. Feb. 23, 2010) ............38, 40

*In re Oneida Ltd.*,
    351 B.R. 79 (Bankr. S.D.N.Y. 2006) ................................................................................13, 40

*In re PRC, LLC*,
    Case No. 08-10239 (MG) (Bankr. S.D.N.Y. Jun. 20, 2008)............................................ 41 BA_Cite_344

*In re Refco Inc.*,
    2006 Bankr. LEXIS 4914 (Bankr. S.D.N.Y. Dec. 14, 2006)...................................................12

*In re Sea Launch Co., L.L.C.*,
    2010 Bankr. LEXIS 5283 (Bankr. D. Del. July 30, 2010) .....................................................26

*In re Specialty Equip. Cos.*,
    3 F.3d 1043 (7th Cir. 1993) ..................................................................................................37

*In re Teligent, Inc.*,
    282 B.R. 765 (Bankr. S.D.N.Y. 2002)...................................................................................21

Interwoven\3764371.6

*In re Terrestar Corp.* (SHL)*,* Case No. 11-10612 (Bankr. S.D.N.Y. Oct. 24, 2012) ..................40

*In re Texaco, Inc.*,
  84 B.R. 893 (Bankr. S.D.N.Y. 1988) ....................................................................3

*In re Toy & Sports Warehouse, Inc.*,
  37 B.R. 141 (Bankr. S.D.N.Y. 1984), *appeal dismissed,* 92 B.R. 38 (S.D.N.Y. 1988) ...........3

*In re WorldCom, Inc.*,
  2003 Bankr. LEXIS 1401 (Bankr. S.D.N.Y. Oct. 31, 2003) .............................................9, 14

*JPMorgan Chase Bank, N.A. v. Charter Commc'ns Operating LLC (In re Charter
  Commc'ns)*,
  419 B.R. 221 (Bankr. S.D.N.Y. 2009) ...................................................................38

*NLRB v. Bildisco & Bildisco*,
  465 U.S. 513 (1984) ....................................................................................30

*Nostas Assocs. v. Costich (In re Klein Sleep Prods., Inc.)*,
  78 F.3d 18 (2d Cir. 1996) ...............................................................................30

*Official Comm. of Unsecured Creditors of Verestar, Inc. v. Am. Tower Corp. (In re
  Verestar, Inc.)*,
  343 B.R. 444 (Bankr. S.D.N.Y. 2006) ..................................................................32

*Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*,
  4 F.3d 1095 (2d Cir. 1993), *cert. dismissed*, 511 U.S. 1026 (1994) ......................................30

*Union Sav. Bank v. Augie/Restivo Baking Co., Ltd. (In re Augie/Restivo Baking Co.,
  Ltd.)*,
  860 F.2d 515 (2d Cir. 1988) ..........................................................................32, 33

## STATUTES

2005 Bankruptcy Code .......................................................................................4

11 U.S.C. § 365 .......................................................................................27, 28

11 U.S.C. § 1123(a)(2) ......................................................................................5

11 U.S.C. § 1123(a)(3) ......................................................................................5

11 U.S.C. § 1123(a)(4) ......................................................................................5

11 U.S.C. § 1123(a)(5) ....................................................................................5, 6

11 U.S.C. § 1123(a)(5)(C) ..................................................................................30

11 U.S.C. § 1123(a)(6) ......................................................................................6

Interwoven\3764371.6

11 U.S.C. § 1123(a)(7) .................................................................................................6, 7

11 U.S.C. § 1125(b) ........................................................................................................9

11 U.S.C. § 1129(a)(4) ..............................................................................................13, 14

11 U.S.C. § 1129(a)(6) ....................................................................................................14

11 U.S.C. § 1129(a)(7) ..........................................................................................14, 15, 16

11 U.S.C. § 1129(a)(9) ...................................................................................17, 18, 20, 21

11 U.S.C. § 1129(a)(9)(B) ..............................................................................17, 18, 20, 21

11 U.S.C. § 1129(a)(9)(C) ......................................................................................18, 21

11 U.S.C. § 1129(a)(9)(D) ................................................................................................18

11 U.S.C. § 1129(a)(10) ...................................................................................................22

11 U.S.C. § 1129(a)(11) ..............................................................................................22, 23

11 U.S.C. § 1129(a)(12) ...................................................................................................23

11 U.S.C.§ 1129(a)(13) ....................................................................................................24

11 U.S.C. §§ 1129(a)(14), (15) & (16) ............................................................................24

11 U.S.C. § 1129(b)(1) .....................................................................................................25

11 U.S.C. § 1129(b)(2)(B)(ii) ...........................................................................................26

11 U.S.C. § 1129(b)(2)(C)(ii) ...........................................................................................26

11 U.S.C. § 1129(c) .....................................................................................................26, 27

11 U.S.C. § 1129(d) ..........................................................................................................27

28 U.S.C. § 1930 ..............................................................................................................23

Bankruptcy Rule 3016(a) ...................................................................................................8

Bankruptcy Rules 2002(b) and 3017(d)-(f) ....................................................................10

Sections 365 and 1123 of the Bankruptcy Code .............................................................27

Section 365(a) of the Bankruptcy Code .....................................................................28, 29

Section 507 of the Bankruptcy Code ...............................................................................18

Interwoven\3764371.6

Sections 507(a)(2), (3) and (8) of the Bankruptcy Code ................................................................4

Section 507(a)(8) of the Bankruptcy Code ................................................................17, 18, 21

Section 507(a)(8)(G) of the Bankruptcy Code................................................................21

Section 1114 of the Bankruptcy Code ................................................................24

Section 1122 of the Bankruptcy Code ................................................................3, 4

Section 1122(b) of the Bankruptcy Code................................................................18

Section 1123(a) of the Bankruptcy Code ................................................................4

Section 1123(a)(1) of the Bankruptcy Code ................................................................4, 5

Section 1123(a)(5)(C) ................................................................30

Section 1123(b) of the Bankruptcy Code................................................................7, 8

Section 1123(d) of the Bankruptcy Code................................................................8

Section 1124 of the Bankruptcy Code ................................................................21

Section 1125 of the Bankruptcy Code ................................................................9, 10

Section 1125(e) of the Bankruptcy Code................................................................35, 36

Section 1126 of the Bankruptcy Code ................................................................10, 11

Section 1126(f) of the Bankruptcy Code................................................................11, 16

Section 1126(g) of the Bankruptcy Code................................................................11, 17

Section 1129(a) of the Bankruptcy Code ................................................................25, 9

Section 1129(a)(1) of the Bankruptcy Code ................................................................3, 9

Section 1129(a)(2) of the Bankruptcy Code ................................................................9, 11

Section 1129(a)(3) of the Bankruptcy Code ................................................................11, 12, 13

Section 1129(a)(5) of the Bankruptcy Code ................................................................14

Section 1129(a)(8) of the Bankruptcy Code ................................................................16, 17, 25

Section 1129(a)(14) of the Bankruptcy Code ................................................................24

Section 1129(a)(15) of the Bankruptcy Code ................................................................24

Section 1129(a)(16) of the Bankruptcy Code ........................................................................24, 25

Section 1129(b) of the Bankruptcy Code .......................................................................17, 25, 26

Fed. R. Evid. 201(c) .........................................................................................................................3

National Labor Relations Act. ......................................................................................................19

**OTHER AUTHORITIES**

COLLIER ON BANKRUPTCY ¶1123.01[5] ........................................................................................6

H.R. Rep. No. 109-31, 109th Cong. 1st Sess. 145 (2005) .........................................................24

H.R. Rep. No. 95-595 (1977), reprinted in 1978 U.S.C.C.A.N. 5963 ...........................................9

S. Rep. No. 95-989 (1978), reprinted in 1978 U.S.C.C.A.N. 5787 ..............................................9

The debtors and debtors in possession in the above-captioned bankruptcy cases (the "Debtors") and the Official Committee of Unsecured Creditors (the "Committee" and with the Debtors, the "Plan Proponents"), by and through their respective counsel, respectfully submit this memorandum of law (the "Confirmation Brief") in support of confirmation of the *First Amended Joint Chapter 11 Plan of Liquidation for Metro Affiliates, Inc. and Its Affiliated Debtors Proposed by the Debtors and the Official Committee of Unsecured Creditors* [ECF No. 1151], which was non-materially amended, signed and dated May 1, 2014 (as further modified and/or amended, the "Plan"),[2] as supplemented by the *Plan Supplement*, dated May 19, 2014 [ECF No. 1242] (as may be further modified and/or amended, the "Plan Supplement" and, together with the Plan, the "Plan Documents"), pursuant to section 1129 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"). In support of confirmation of the Plan, the Plan Proponents submit: (i) the *Certification of James Lee With Respect To The Tabulation of Votes on the First Amended Joint Chapter 11 Plan of Liquidation for Metro Affiliates, Inc. and Its Affiliated Debtors Proposed by the Debtors and the Official Committee of Unsecured Creditors* [ECF No. 1325] (the "Lee Certification")[3]; and (ii) the *Declaration of David J. Carpenter In Support of the First Amended Joint Chapter 11 Plan of Liquidation for Metro Affiliates, Inc. and Its Affiliated Debtors Proposed by the Debtors and the Official Committee of Unsecured Creditors*, filed simultaneously herewith (the "Carpenter Declaration"[4] and, with the Lee Certification, the "Declarations") and respectfully represent as follows:

<u>PRELIMINARY STATEMENT</u>

The Plan provides a framework for liquidating and distributing the Debtors' remaining

---

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Plan and/or the Disclosure Statement, as applicable.

[3] Cited herein as the "Lee Cert."

[4] Cited herein as the "Carpenter Decl."

1

assets. The Debtors will make distributions as prescribed under the Plan to Holders of allowed administrative expense and priority tax claims. With respect to all other unsecured creditors, the cornerstone of the Plan is the Liquidating Trust. The Trust, which will be managed by a Liquidating Trustee under the supervision of an Oversight Committee, will liquidate the Debtors' remaining unencumbered assets and make distributions to Holders of Allowed Priority Non-Tax Claims and, if and when those Claims are satisfied, to general unsecured creditors. After making distributions on account of all Allowed Administrative Expense Claims and Allowed Priority Tax Claims, the Debtors, having no further assets or operations, will dissolve following the occurrence of the Effective Date after completing the wind-down of their affairs.[5]

For the reasons set forth below and in the Declarations, the Plan Proponents respectfully submit that the Plan complies fully with all applicable legal requirements and, therefore, should be confirmed.

## STATEMENT OF FACTS

1. The facts relevant to confirmation of the Plan are set forth in the Disclosure Statement, the Plan, the Declarations and any evidence presented or testimony that may be adduced at the hearing for confirmation of the Plan (the "<u>Confirmation Hearing</u>"), all of which are incorporated herein by reference.

## REQUEST FOR JUDICIAL NOTICE

2. The Plan Proponents respectfully request that the Court take judicial notice of the entire docket of the Debtors' Chapter 11 Cases, and all pleadings and other documents filed, all Orders entered, and evidence and arguments made, proffered or adduced at, the hearings held

---

[5] Plan at Article VII, Section 7.2.

before the Court during the pendency of the Chapter 11 Cases.[6]

## ARGUMENT

### I. THE PLAN COMPLIES WITH THE CONFIRMATION STANDARDS SET FORTH IN SECTION 1129 OF THE BANKRUPTCY CODE

3. Section 1129 of the Bankruptcy Code sets forth the requirements that must be satisfied for a plan to be confirmed. Through evidence to be presented at the Confirmation Hearing, as set forth in the Declarations and as demonstrated herein, the Plan Proponents have established, by a preponderance of the evidence, that the Plan satisfies all confirmation requirements and should be approved.

#### A. The Plan Complies With The Applicable Provisions Of Title 11 – Section 1129(a)(1)

4. Pursuant to section 1129(a)(1) of the Bankruptcy Code a plan may be confirmed only if it "complies with the applicable provisions of" the Bankruptcy Code. It is well-established that the requirement in section 1129(a)(1) primarily focuses on compliance with section 1122 (governing classification of claims and interest) and section 1123 (governing necessary and permissible plan provisions).[7] As demonstrated below, the Plan fully complies with all of the applicable provisions of the Bankruptcy Code (as required by section 1129(a)(1)), including, without limitation, sections 1122 and 1123.

##### 1. The Plan Complies with the Requirements of Section 1122

5. Pursuant to section 1122 of the Bankruptcy Code, claims or interests within a

---

[6] *See* Fed. R. Evid. 201(c).

[7] *See In re Johns-Manville Corp.*, 68 B.R. 618, 629 (Bankr. S.D.N.Y. 1986) (stating that "[o]bjections to confirmation raised under § 1129(a)(1) generally involve the failure of a plan to conform to the requirements of § 1122(a) or § 1123"), *aff'd in part, rev'd in part on other grounds*, 78 B.R. 407 (S.D.N.Y. 1987); *In re Texaco, Inc.*, 84 B.R. 893, 905 (Bankr. S.D.N.Y. 1988) ("In determining whether a plan complies with section 1129(a)(1), reference must be made to Code §§ 1122 and 1123 with respect to the classification of claims and the contents of a plan of reorganization.") (citing *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984)), *appeal dismissed*, 92 B.R. 38 (S.D.N.Y. 1988).

given class must be "substantially similar" to the other claims or interests in that class. Article II of the Plan provides for the separate classification of Claims and Interests into seven distinct Classes based upon (i) their secured status, if applicable, (ii) their legal priority against the Debtors' assets and (iii) other relevant criteria. The seven distinct Classes of the Plan are as follows[8]:

| Class | Claim /Interest |
|-------|-----------------|
| 1 | Real Property Tax Claims |
| 2 | Priority Non-Tax Claims |
| 3 | Noteholders Claims |
| 4 | Other Secured Claims |
| 5 | General Unsecured Claims |
| 6 | Insured Claims |
| 7 | Interests |

*See* Plan, Art. II, Section 2.2.; Carpenter Decl. ¶ 5. Accordingly, the legal rights of each of the Holders of Claims or Interests within a particular Class are substantially similar to other Holders of Claims or Interests within that Class and the Plan satisfies the requirements of section 1122.

### 2. The Plan Complies with the Requirements of Section 1123(a)

6. As applicable here, section 1123(a) of the Bankruptcy Code sets forth seven requirements for every chapter 11 plan.[9] The Plan complies with each such requirement.

#### i. The Plan Designates Classes of Claims And Interests – 11 U.S.C. § 1123(a)(1)

7. Section 1123(a)(1) of the Bankruptcy Code requires that a plan designate classes of claims and interests, other than claims of the kinds specified in sections 507(a)(2) (administrative expense claims), 507(a)(3) (claims arising during the "gap" period in an involuntary case) and 507(a)(8) of the Bankruptcy Code (unsecured priority tax claims).

---

[8] In accordance with section 1123(a)(1) of the Bankruptcy Code, DIP Claims, Administrative Claims and Priority Tax Claims have not been classified. *See* Plan, Art. III.

[9] Section 1123(a)(8), added with the enactment of the 2005 Bankruptcy Code amendments, is only applicable to individual debtor cases and, therefore, is not addressed herein.

4

8.  Article II of the Plan designates seven Classes of Claims and Interests, not including Claims of the kinds specified in sections 507(a)(2), (3) and (8) of the Bankruptcy Code.  Plan, Art. II.  Thus, the Plan complies with the requirements of section 1123(a)(1) of the Bankruptcy Code.

ii.      The Plan Specifies Unimpaired<br>
<u>Classes – 11 U.S.C. § 1123(a)(2)</u>

9.  Section 1123(a)(2) of the Bankruptcy Code requires that a plan "specify any class of claims or interests that is not impaired under the plan." Article II, Section 2.2 of the Plan specifies the Classes of Claims and Interests that are unimpaired under the Plan.  Therefore, the Plan complies with the requirements of section 1123(a)(2) of the Bankruptcy Code.

iii.      The Plan Adequately Specifies The Treatment<br>
<u>Of Impaired Classes – 11 U.S.C. § 1123(a)(3)</u>

10. Section 1123(a) (3) of the Bankruptcy Code requires that a plan "specify the treatment of any class of claims or interests that is impaired under the plan."  Article V of the Plan specifies the treatment of Claims and Interests that are impaired under the Plan.  Thus, the Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

iv.      The Plan Provides the Same Treatment<br>
For Claims Or Interests Within Each<br>
<u>Class – 11 U.S.C. § 1123(a)(4)</u>

11. Section 1123(a)(4) of the Bankruptcy Code requires that a plan provide the "same treatment for each claim or interest of a particular class." Article V of the Plan specifies the treatment of Claims and Interests; all Claims or Interests are treated the same as other Claims and Interest in the same Class.  Thus, the Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

5

v.       The Plan Provides Adequate Means For
Its Implementation – 11 U.S.C. § 1123(a)(5)

12. Section 1123(a)(5) of the Bankruptcy Code requires that a plan "provide adequate means for the plan's implementation" and provides certain examples.  11 U.S.C. § 1123(a)(5); COLLIER ON BANKRUPTCY ¶1123.01[5] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("The types of means listed in section 1123(a)(5) are clearly illustrative and not exclusive."). Article VII of the Plan sets forth the general mechanisms for implementing the Plan.  *See*, *e.g.*, Plan, Art. VII, Section 7.1 (substantive consolidation)[10]; Plan, Art. VII, Section 7.3.3. (vesting of the Debtors' assets); Plan, Art. VII, Section 7.12. (cancellation of existing agreements and existing common stock).   In particular, Article VII, Section 7.3., contains provisions for establishing and operating the Liquidating Trust.  *See, e.g.*, Plan, Art. VII, Section 7.3.1. (creation of the Liquidating Trust); Plan, Art. VII, Section 7.3.3. (vesting of Liquidating Trust Assets in the Liquidating Trust); Plan, Art. VII, Section 7.3.4. (governance of the Liquidating Trust).

13. As such, the Plan contains appropriate implementation provisions and complies with the requirements of section 1123(a)(5) of the Bankruptcy Code.

vi.       The Plan Does Not Provide For the Issuance of
Non-Voting Equity Securities – 11 U.S.C. § 1123(a)(6)

14. Section 1123(a)(6) of the Bankruptcy Code requires that a plan provide that the debtor's corporate governance documents prohibit the issuance of nonvoting equity securities. Here, the Plan provides for the dissolution of the Debtors and, therefore, section 1123(a)(6) does not apply.

---

[10] *See* discussion in Section III, *infra*.

Interwoven\3764371.6

vii.    The Plan Contains Appropriate Provisions
        Respecting The Selection Of Post-
        Confirmation Directors And Officers –
        11 U.S.C. § 1123(a)(7)

15. Section 1123(a)(7) of the Bankruptcy Code requires that a plan "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director or trustee." The Plan provides that following the occurrence of the Effective Date, the Debtors shall be dissolved and such dissolution shall be effective as of the date the Debtors complete performance of their obligations under the Plan pursuant to the Confirmation Order. Plan, Art. VII, Section 7.2.

16. As a limited exception, the Plan provides that, in furtherance of and consistent with the purpose of the Liquidating Trust and Plan, the Liquidating Trustee shall "be responsible for all decisions and duties with respect to the Liquidating Trust and the Liquidating Trust Assets, subject to the Plan and Liquidating Trust Documents." Plan, Art. VII, Section 7.3.5. The Liquidating Trustee was selected by the Committee, in consultation with the Debtors and Wayzata. Plan, Art. VII, Section 7.3.4.; Carpenter Decl. ¶ 10. The selection of Robert Hirsh as Liquidating Trustee was disclosed in the Plan Supplement. Carpenter Decl. ¶ 18. No party has objected to the selection of the Liquidating Trustee. The Liquidating Trustee's rights and duties are subject to oversight by the Oversight Committee. Plan, Art. VII, Section 7.10.1. The Oversight Committee will be formed on the Effective Date and will consist of three members – two members will be designated by the Committee and one member will be designated by Wayzata. Plan, Art. VII, Section 7.10.1. In light of the foregoing, the manner of selection of the Liquidating Trustee and the Oversight Committee is consistent with the interests of holders of Claims and Interests and public policy.

7

17. Accordingly, the Plan satisfies section 1123(a)(7) of the Bankruptcy Code.

### 3. The Plan Complies with the Requirements Of Section 1123(b)

18. Section 1123(b) of the Bankruptcy Code identifies various discretionary provisions that may be included in a plan. The Plan contains certain of the provisions specifically contemplated by section 1123(b) including provisions regarding (i) impairment and unimpairment of Classes of Allowed Claims and Interests (Plan, Art. II) as contemplated by section 1123(b)(1); (ii) the assumption or rejection of executory contracts and unexpired leases (Plan, Art. X) as contemplated by section 1123(b)(2); (iii) settlement or retention of claims belonging to the estates (Plan, Art. XII) as contemplated by section 1123(b)(3); and (iv) modification of the rights of Holders of Secured Claims (Plan, Art. V, Section 5.1.4) as contemplated by section 1123(b)(5).

19. Moreover, the Plan contains other provisions that fall within the catch-all discretionary provision in section 1123(b)(6) the Bankruptcy Code, which permits a plan to include other provisions not inconsistent with the applicable provisions of the Bankruptcy Code. *See*, *e.g.*, Plan, Art. XIV. (the Court's retention of jurisdiction as to specified matters), Plan, Art. VIII. (distributions on account of Allowed Claims), Plan, Art. IX. (procedures for resolving disputed claims and making distributions thereto), Plan, Art. XII. (the preservation of certain claims and causes of action, the comprehensive settlement of claims and controversies, related releases and injunctions against certain actions and the cancellation of securities) and Plan, Art. VII, Section 7.1. (the substantive consolidation of the Debtors).[11]

20. Thus, the Plan complies with section 1123(b) of the Bankruptcy Code.

---

[11] The Plan's release and exculpation provisions are discussed in Section IV, *infra*, and substantive consolidation is discussed in Section III, *infra*.

### 4. Section 1123(d) And Bankruptcy Rule 3016(a)

21. Finally, the Plan complies with section 1123(d) of the Bankruptcy Code, which provides that if a plan proposes to cure a default, "the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." The Plan does not provide otherwise. Carpenter Decl. ¶ 11. Moreover, the Plan complies with Bankruptcy Rule 3016(a) because it is dated May 1, 2014 and identifies that the Debtors and the Committee are proponents.

22. Accordingly, the Plan complies with the requirements of sections 1122 and 1123 of the Bankruptcy Code (as well as with the other applicable provisions of the Bankruptcy Code and the Bankruptcy Rules) and, thus, satisfies the requirements of section 1129(a)(1) of the Bankruptcy Code.

### B. The Plan Proponents Have Complied With The Provisions Of Title 11 – Section 1129(a)(2)

23. Section 1129(a)(2) of the Bankruptcy Code requires that a plan proponent "compl[y] with the applicable provisions of [title 11]." The inquiry under section 1129(a)(2) focuses on whether the plan proponent has complied with the disclosure and solicitation requirements of sections 1125 and 1126.[12] The Plan Proponents have complied with the applicable provisions of the Bankruptcy Code, including, without limitation, sections 1125 and 1126 and the applicable Bankruptcy Rules regarding plan disclosures and solicitation.

---

[12] *See* S. Rep. No. 95-989, at 126 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5912 ("Paragraph (2) [of section 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure."); H.R. Rep. No. 95-595, at 412 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6368; *see also In re WorldCom, Inc.*, 2003 Bankr. LEXIS 1401 at *143-144 (Bankr. S.D.N.Y. Oct. 31, 2003) (stating that "[t]he legislative history to section 1129(a)(2) reflects that this provision is intended to encompass the disclosure and solicitation requirements under sections 1125 and 1126 of the Bankruptcy Code."); *In re Johns-Manville*, 68 B.R. at 630 ("Objections to confirmation raised under § 1129(a)(2) generally involve the alleged failure of the plan proponent to comply with § 1125 and § 1126 of the Code").

1.      **The Plan Proponents' Compliance With
Section 1125 of the Bankruptcy Code**

24. Section 1125 of the Bankruptcy Code prohibits the solicitation of acceptances or rejections of a plan from holders of claims or interests "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved . . . by the court as containing adequate information." 11 U.S.C. § 1125(b).

25. On May 1, 2014, the Court entered an Order approving the Disclosure Statement and procedures for the transmittal of the Disclosure Statement and solicitation materials [ECF No. 1173] (the "DS Order"). Beginning on or about May 7, 2014, the Plan Proponents, through KCC, transmitted solicitation materials in accordance with the DS Order. Carpenter Decl. ¶ 14; Lee Cert. ¶ 7. *See also* Affidavit of Service filed by KCC, May 7, 2014 [ECF No. 1200] (the "KCC Affidavit"). Specifically, KCC caused copies of the following documents to be served, via first class mail or via overnight delivery:

- Classes 1 and 4: (i) *Notice of Hearing To Consider Confirmation of Debtors' Joint Chapter 11 Plan of Liquidation* (the "Confirmation Hearing Notice"); and (ii) *Non-Voting Status Notice with Respect to Unimpaired Classes Deemed to Accept the Joint Chapter 11 Plan of Liquidation for Metro Affiliates, Inc. and Its Affiliated Debtors Proposed by the Debtors and the Official Committee of Unsecured Creditors*

- Classes 2, 3, 5 and 6: a solicitation package containing a copy or conformed version of: (i) the Confirmation Hearing Notice; (ii) the Disclosure Statement, in CD-ROM format; (iii) the Plan (furnished as Exhibit A to the Disclosure Statement); (iv) the DS Order, in CD-ROM format; and (v) a ballot, with instructions attached thereto, with a pre-addressed, postage prepaid return envelope.

- Class 7: (i) the Confirmation Hearing Notice; and (ii) *Non-Voting Status Notice with Respect to Impaired Classes Deemed to Reject the Debtors' Joint Chapter 11 Plan of Liquidation for Metro Affiliates, Inc. and Its Affiliated Debtors Proposed by the Debtors and the Official Committee of Unsecured Creditors*.

26. Finally, as set forth in the DS Order, the Plan Proponents caused publication notice to be published in the National Edition of *USA Today* on May 8, 2014. Carpenter Decl. ¶ 13. *See also* Affidavit of Publication re Notice of Hearing To Consider Confirmation of Debtors' Joint Chapter 11 Plan of Liquidation in the USA Today [ECF No. 1225] (together with the KCC Affidavit, the "Service Declarations").

27. The Carpenter Declaration, the Lee Certification and the Service Declarations demonstrate that the Plan Proponents served the solicitation materials in accordance with the requirements of Bankruptcy Rules 2002(b) and 3017(d)-(f) and the DS Order. As such, the Plan Proponents have complied with section 1125 of the Bankruptcy Code.

2.  **The Plan Proponents' Compliance With
    Section 1126 of the Bankruptcy Code**

28. Section 1126 of the Bankruptcy Code specifies the requirements for acceptance of a plan and generally provides that holders of claims or interests are entitled to vote on the plan; however, an unimpaired class is conclusively deemed to accept the plan[13] and a class that will not receive or retain any property under the plan is deemed to reject.[14]

29. The Plan Proponents have complied with these requirements. Class 1 (Real Property Tax Claims) and Class 4 (Other Secured Claims) are unimpaired under the Plan and, pursuant to section 1126(f), those Classes are conclusively deemed to accept the Plan and have not been solicited to vote. Carpenter Decl. ¶ 15; Lee Cert. ¶ 7. Holders in Class 7 (Interests) are not entitled to receive or retain any property under the Plan and, pursuant to section 1126(g),

---

[13] Section 1126(f) of the Bankruptcy Code provides that "a class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required." 11 U.S.C. § 1126(f).

[14] Section 1126(g) of the Bankruptcy Code provides that "a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests." 11 U.S.C. § 1126(g).

those classes are deemed to reject the Plan and have not been solicited to vote. Carpenter Decl. ¶ 15; Lee Cert. ¶ 7. Class 2 (Priority Non-Tax Claims), Class 3 (Noteholders Claims), Class 5 (General Unsecured Claims), and Class 6 (Insured Claims) are impaired and Holders of Allowed Claims in those Classes are entitled to receive property under the Plan; accordingly, Holders of Claims in Classes 2, 3, 5 and 6 were solicited to accept or reject the Plan. Carpenter Decl. ¶ 15; Lee Cert. ¶ 7, 8.

30. Based upon the foregoing, the Plan Proponents' solicitation of votes with respect to the Plan was undertaken in conformity with sections 1125 and 1126 of the Bankruptcy Code and the DS Order. The Plan Proponents, therefore, have complied with applicable provisions of the Bankruptcy Code and have satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code.

### C. The Plan Has Been Proposed In Good Faith And Not By Any Means Forbidden By Law – Section 1129(a)(3)

31. Section 1129(a)(3) of the Bankruptcy Code requires that the Plan be "proposed in good faith and not by any means forbidden by law." Good faith has been found where, as here, a plan was proposed to maximize the value of the debtors' estates for the benefit of the debtors' creditors and parties in interest, and where a plan fairly achieves a result consistent with the objectives and purposes of the Bankruptcy Code. *See In re Old Carco LLC*, 2010 Bankr. LEXIS 5711 at *26 (Bankr. S.D.N.Y. Apr. 23, 2010) ("The Plan fairly achieves a result consistent with the objectives and purposes of the Bankruptcy Code; specifically, the Plan is designed to liquidate the remaining assets of the Debtors' Estates in the most efficient and cost effective manner, thereby maximizing the value of the ultimate recoveries for the Debtors' creditors on a fair and equitable basis."); *In re Refco Inc.*, 2006 Bankr. LEXIS 4914 (Bankr. S.D.N.Y. Dec. 14, 2006). Good faith should be evaluated "in light of the totality of the circumstances surrounding

12

confirmation." *In re Oneida Ltd.*, 351 B.R. 79, 85 (Bankr. S.D.N.Y. 2006) (citing *In re Cellular Info Sys., Inc.*, 171 B.R. 926, 945 (Bankr. S.D.N.Y. 1994)); *see also In re Old Carco LLC*, 2010 Bankr. LEXIS 5711 at *27.

32. Good faith for purposes of section 1129(a)(3) of the Bankruptcy Code also may be found where the plan is supported by key creditor constituencies or was the result of arm's-length negotiations with creditors. *See In re Leslie Fay Cos.*, 207 B.R. 764, 781 (Bankr. S.D.N.Y. 1997) ("The fact that the plan is proposed by the committee as well as the debtors is strong evidence that the plan is proposed in good faith."); *In re Eagle-Picher Indus.*, 203 B.R. 256, 274 (Bankr. S.D. Ohio 1996) (finding that plan of reorganization was proposed in good faith when, among other things, it was based on arm's-length negotiations among plan proponents and other parties in interest).

33. The Plan provides the framework for liquidating the Debtors' remaining assets and distributing proceeds to creditors in a manner consistent with the priorities in the Bankruptcy Code. *See* Carpenter Decl. ¶ 16. That will be implemented primarily through the Liquidating Trust. The Plan has been jointly proposed by the Debtors and the Committee and is the result of good faith, arm's-length negotiations among the Debtors, the Committee and key creditor constituencies. *See* Carpenter Decl. ¶ 16. As set forth herein, the Plan enjoys nearly unanimous support from voting Classes. Lee Cert. ¶ 13. The Plan Proponents firmly believe that the Plan provides the best and most efficient path for winding down the Estates and maximizing the distributions to stakeholders. Carpenter Decl. ¶ 16.

34. Further, the Plan has been proposed in compliance with all applicable laws, rules and regulations. As such, the Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code.

D.     **The Plan Provides For Bankruptcy Court Approval Of
Payment For Services And Expenses – 11 U.S.C. § 1129(a)(4)**

35. Section 1129(a)(4) of the Bankruptcy Code requires that payments for services or costs and expenses incurred in or in connection with a chapter 11 case, or in connection with a plan and incident to the case, either be approved by or be subject to approval of the court as reasonable. *See* 11 U.S.C. § 1129(a)(4).[15]

36. Under the Plan, all payments made or to be made by the Debtors for services or for costs or expenses in connection with these Chapter 11 Cases incurred prior to the Effective Date have already been approved by, or are subject to approval of the Court as reasonable. *See* Plan, Art. IV.  Specifically, the Plan provides for the payment of only Allowed Administrative Claims on account of Professional Fees.  *Id.*; Carpenter Decl. ¶ 17.   In addition, the Plan provides that all final requests for payment of Administrative Claims on account of Professional Fees shall be filed no later than 60 days after the Effective Date for determination by the Court. *Id.*  Accordingly, the requirements of section 1129(a)(4) have been satisfied.

E.     **The Plan Proponents Have Disclosed All Necessary
Information Regarding Officers And Directors – Section 1129(a)(5)**

37. Section 1129(a)(5) of the Bankruptcy Code requires that the plan proponent disclose the identity and affiliations of the proposed officers and directors of the reorganized debtor, the identity of any insider to be employed or retained by the reorganized debtor and the nature of any compensation proposed to be paid to such insider.  As the Debtors will cease to exist pursuant to the Plan, the requirements imposed by section 1129(a)(5) of the Bankruptcy Code are largely inapplicable.  The Liquidating Trustee will oversee the management and distribution of the Debtors' assets.  The Plan Proponents disclosed the identity of the Liquidating

---

[15] "Section 1129(a)(4) has been construed to require that all payments of professional fees that are made from estate assets be subject to review and approval as to their reasonableness by the Court."  *In re WorldCom*, 2003 Bankr. LEXIS 1401 at *159; *see also In re Johns-Manville*, 68 B.R. at 632.

Trustee (selected by the Committee in consultation with the Debtors and Wayzata) in the Plan Supplement and the Plan sets forth the manner in which the Oversight Committee, which will provide oversight to the Liquidating Trustee, will be structured. No party in interest has objected to the selection of the Liquidating Trustee or the membership structure of the Oversight Committee. Based upon the foregoing, the Plan Proponents have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code to the extent they may be applicable.

F. **The Plan Does Not Contain Rate Changes Subject To The Jurisdiction Of Any Governmental Regulatory Commission – 11 U.S.C. § 1129(a)(6)**

38. Section 1129(a)(6) of the Bankruptcy Code requires that any governmental regulatory commission having jurisdiction over the rates charged by the post-confirmation debtor in the operation of its business approve any rate change provided for in the plan. Because the Plan does not propose any such rate changes, section 1129(a)(6) does not apply.

G. **The Plan Is In the Best Interests Of Creditors – 11 U.S.C. § 1129(a)(7)**

39. Section 1129(a)(7) of the Bankruptcy Code requires that each holder of a claim or interest in an impaired class either (i) accept the plan or (ii) receive or retain property of a value, as of the effective date of the plan, not less than what such holder would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code on that date. 11 U.S.C. § 1129(a)(7).[16] Referred to as the "best interests of creditors" test, section 1129(a)(7) focuses on individual dissenting creditors rather than classes of claims.[17] In considering whether a plan is in the "best interests" of creditors, a court need not consider any alternative to the plan other than

_____

[16] *See also Bank of Am. Nat'l Trust & Savs. Ass'n v. 203 N. LaSalle St. P'Ship*, 526 U.S. 434, 442 n.13 (1999); *U.S. v. Reorganized CF&I Fabricators, Inc.*, 518 U.S. 213, 228 (1996); *ACC Bondholder Group v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 361 B.R. 337, 364 (S.D.N.Y. 2007); *In re Drexel Burnham Lambert Group*, 138 B.R. 723, 761 (Bankr. S.D.N.Y. 1992).

[17] *See LaSalle*, 526 U.S. 442 n.13 (stating that the "'best interests' test applies to individual creditors holding impaired claims, even if the class as a whole votes to accept the plan."); *ACC Bondholder Group v. Adelphia Commc'ns Corp. (In re Adelphia Comm. Corp.)*, 361 B.R. 337, 364 (S.D.N.Y. 2007) (same, quoting *LaSalle*).

the recoveries projected in a liquidation of all the debtor's assets under chapter 7 of the Bankruptcy Code. *See*, *e.g.*, *In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 297 (Bankr. S.D.N.Y. 1990).

40. The best interests test applies to Holders of Claims in Classes 2, 3, 5, and 6, all of which are impaired under the Plan. Consequently, each of those Holders must either vote to accept the Plan or else receive the requisite level of recovery.

41. As set forth in the Disclosure Statement, the Plan Proponents have concluded (i) that creditor recoveries will be maximized by completing the liquidation of any remaining assets of the Debtors under chapter 11 and making distributions pursuant to the Plan and (ii) that the Debtors' Estates have value that would not be fully realized in a chapter 7 liquidation primarily because (a) additional administrative expenses would be incurred in a chapter 7 liquidation, specifically those of a chapter 7 trustee charging statutory fees of up to 3% of disbursements and any costs of counsel to the chapter 7 trustee to become familiar with the facts and circumstances of these cases, and (b) the additional delay in distributions that would occur if the Debtors' chapter 11 cases were converted to a case under chapter 7. Disclosure Statement, Section Exhibit B, Liquidation Analysis; *see also* Carpenter Decl. ¶ 20. Based on the foregoing analysis, all non-accepting Holders of Claims in Classes 2, 3, 5 or 6 will not receive less under the Plan than in a chapter 7 liquidation. As a result, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

H.    **Not All Impaired Classes Have Accepted The Plan – Section 1129(a)(8)**

42. Pursuant to section 1129(a)(8), each class of claims and interests under a plan must either (i) have accepted the plan, or (ii) be rendered unimpaired under the plan.

43. All unimpaired Classes of Claims under the Plan (i.e., Classes 1 and 4) are

16

conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. With respect to the impaired voting Classes, and as set forth in paragraph 13 of the Lee Certification, the chart below provides a summary of votes cast and amounts voted accepting the Plan:

| Total Ballots Received | | | |
|---|---|---|---|
| Accept | | Reject | |
| Number | Amount | Number | Amount |
| Class 2 – Priority Non Tax Claims[18] | | | |
| 40 (89.96%) | $15,281,601.07 (99.76%) | 6 (13.04%) | $36,231.39 (0.24%) |
| Accept | | Reject | |
| Number | Amount | Number | Amount |
| Class 3 – Noteholder Claims | | | |
| 7 (100.00%) | $140,650,761.00 (100%) | 0 (0.00%) | $0.00 (0.00%) |
| Class 5 – General Unsecured Claims | | | |
| 72 (93.51%) | $3,525,295,798.89 (99.99%) | 5 (6.49%) | $230,971.50 (0.01%) |
| Class 6 – Insured Claims | | | |
| 14 (82.35%) | $39,191,252.00 (68.23%) | 3 (17.65%) | $18,250,000.00 (31.77%) |

*See* Lee Cert. ¶ 13. For each voting Class, this result far exceeds the required one-half in number and two-thirds in amount necessary for Class acceptance under section 1126(c).

44. Holders of impaired Interests in Class 7 (the "Rejecting Class") will not receive or retain any property pursuant to the Plan and, as such, such Holders are deemed to reject the Plan, consistent with section 1126(g). Accordingly, the requirements of section 1129(a)(8) of the Bankruptcy Code are not met with respect to the Rejecting Class. Nonetheless, the Plan can be confirmed because the Rejecting Class can be crammed-down pursuant to section 1129(b) of the

---

[18] Most Claims in Class 2, other than those held by the NLRB and Local 1181 have been objected to by the Debtors. *See infra*, section I.2.I, for further discussion regarding Class 2 Claim Objections. The tabulation includes the face value of claims to which objections have been filed because the objections were filed after the Voting Record Date. Notwithstanding, even if the voting amount of claims subject to objections were set at $1.00 for tabulation purposes, the voting requirements under section 1126(c) of the Bankruptcy Code would be satisfied. Lee Cert. ¶ 12.

Bankruptcy Code.  *See* Section O, *infra*.

I.       **The Plan Provides For Payment In Full of All**
         **Allowed Priority Claims – 11 U.S.C. § 1129(a)(9)**

    45. Section 1129(a)(9) of the Bankruptcy Code requires that, except to the extent that

the holder of a particular claim agrees to a different treatment of such claim:

    (a)           holders of claims entitled to priority under section 507(a)(2) must receive cash in the allowed amounts of such claims on the effective date of the Plan;[19]

    (b)           holders of claims entitled to priority under section 507(a)(1) or (a)(4)-(7) must receive (1) if the class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (2) if the class has not accepted the plan, cash equal to the allowed amount of such claim on the effective date of the plan;[20]

    (c)           holders of tax claims entitled to priority under section 507(a)(8) must receive on account of such claims regular installment payments in cash: (i) of a total value, as of the effective date of the plan, equal to the allowed amount of the claim; (ii) over a period ending not later than five years after the date the order for relief was entered in the chapter 11 case; and (iii) in a manner not less favorable than the most favored non-priority unsecured claim provided for by the plan (other than cash payments made to a convenience class under section 1122(b) of the Bankruptcy Code);[21]

    (d)           with respect to a secured claim that would otherwise meet the description of an unsecured claim of a governmental unit under section 507(a)(8) of the Bankruptcy Code (but for the claim's secured status), the holder of such a claim will receive cash payments in the same manner and over the same period as prescribed in section 1129(a)(9)(C) of the Bankruptcy

---

[19] 11 U.S.C. 1129(a)(9)(A).

[20] 11 U.S.C. § 1129(a)(9)(B).

[21] 11 U.S.C. § 1129(a)(9)(C).

Code.[22]

*See* 11 U.S.C. § 1129(a)(9).  The Plan satisfies each of the requirements of section 1129(a)(9).

### (1) 1129(a)(9)(A)

46. Consistent with section 1129(a)(9)(A), the Plan provides for all Allowed Administrative Claims (*i.e.*, § 507(a)(2) claims) to receive a distribution from the Consummation Account in an amount that is equal to such Allowed Administrative Claim, without interest, on or as soon as reasonably practicable after the latest to occur of: (i) the Effective Date; (ii) the first Business Day after the date that is ten (10) Business Days after the date such Administrative Claim becomes an Allowed Administrative Claim; and (iii) the date or dates agreed to by the Debtors and the Holder of the Allowed Administrative Claim.  Plan, Art. III, Section 3.2.

### (2) 1129(a)(9)(B)

47. Consistent with section 1129(a)(9)(B), the Plan classifies all Priority Non-Tax Claims[23] in Class 2 and provides that holders of Allowed Priority Non-Tax Claims shall receive a distribution of Cash or such other treatment as may be agreed from the Other GUC Escrow, and if the Other GUC Escrow is exhausted, the proceeds of any and all other Liquidating Trust Assets not allocated to the Allowed Noteholders Claims, after reserving for the unpaid reasonable fees and expenses incurred by the Liquidating Trustee, and any professionals retained by the Liquidating Trustee, in an amount that is equal to such Allowed Priority Non-Tax Claim. Plan, Art. V, Section 5.1.2. The Other GUC Escrow has already been funded by the Debtors with $1,000,000 in Cash. Carpenter Decl. ¶ 23.

---

[22] 11 U.S.C. § 1129(a)(9)(D).

[23] Plan Art. I, Section 1.1.93. defines Non-Priority Tax Claims as follows: "any Claim against any of the Debtors that is entitled to priority in accordance with section 507 of the Bankruptcy Code other than an Administrative Claim or a Priority Tax Claim.  For the avoidance of doubt, a portion of the Claims asserted by the NLRB against certain Debtors shall be included as Priority Non-Tax Claims if so Allowed by the Court."

48.   The Plan Proponents are mindful that creditors filed Priority Non-Tax Claims in an aggregate amount well in excess of the funds anticipated to be available under the Plan for distribution to unsecured creditors. As a result, the Debtors filed objections to numerous Priority Non-Tax Claims, primarily on the grounds that the filed Claims (i) are not consistent with the Debtors' books and records or (ii) duplicate the claims filed by another creditor.[24] The Plan Proponents believe that all such disputed Claims will be disallowed, leaving only two major Holders of Allowed Class 2 Claims – (i) Local 1181-1061, Amalgamated Transit Union, AFL-CIO, and the health and welfare benefit funds associated therewith ("Local 1181"), and (ii) the National Labor Relations Board (the "NLRB") – and a handful of Holders holding less than $10,000 of Allowed Class 2 Claims.

49.   The NLRB's Claim arises out of the NLRB's assertion that certain of the Debtors are liable for back pay obligations arising from alleged violations of the National Labor Relations Act. The Debtors disagree with the NLRB's position. Litigation regarding the alleged back pay obligations was commenced by the NLRB in June 2013 and currently remains pending before the NLRB (the "NLRB Actions"). In connection with its back pay assertions, the NLRB filed claims against the Debtors in the approximate amount of $18 million, of which it asserts approximately $6.4 million is entitled to priority treatment under the Bankruptcy Code.[25]   Local 1181 has also filed claims stemming from these same alleged violations.[26]   If the NLRB prevails in the NLRB Actions, then the amount of back pay arising for services rendered during the 180-day period prior to the Petition Date will likely exceed the amount of anticipated funds available

---

[24] *See Debtors' Omnibus Objections to Certain Proofs of Claim* [ECF Nos. 1206, 1207, 1208, 1210, 1212, 1213, 1214, 1215, 1216, 1217, 1218, 1219, 1220 (amending ECF No. 1207), 1268, 1269, 1272, 1273 and 1276].

[25] *See* Disclosure Statement, Art. IV, Sec. 4.3 and 4.9.

[26] The NLRB, Local 1181 and some individual employees all filed proofs of claim relating to the same alleged violations.  The Debtors will only be making a single distribution on account of such duplicate claims.

for distribution under the Plan.

50. In recognition of the priority standing of any Allowed Class 2 Claims, the Plan provides that all assets available for distribution to unsecured creditors will be used to pay or otherwise satisfy the Allowed Priority Non-Tax Claims until such Class 2 Claims are paid in full or all assets are exhausted. Distributions to general unsecured creditors will be made only upon satisfaction of all Allowed Class 2 Claims. Plan, Art. V, Sec. 5.2.8. As set forth in the Disclosure Statement, because the aggregate amount of the asserted Local 1181 and NLRB Claims exceeds the amounts anticipated to be available for distribution under the Plan, depending on the outcome of the NLRB Actions, it is possible that the Plan may not result in the payment in full of all Allowed Priority Non-Tax Claims and therefore would result in no distribution to general unsecured creditors.

51. Bankruptcy Code section 1129(a)(9)(B) provides that allowed non-priority claims shall receive payment in full on account of their allowed claims "except to the extent that the holder of a particular claim has agreed to a different treatment of such claim."[27] Local 1181 and the NLRB, both represented by counsel, have been actively involved in the Chapter 11 Cases and are aware of the possibility that there may be insufficient funds to pay Allowed Priority Non-Tax Claims in full if the NLRB prevails in the NLRB Actions. Neither Local 1181 nor the NLRB objected to the Plan on this or any other ground, and each in fact voted to accept the Plan. Local 1181 (and its associated funds) and the NLRB have therefore consented to the treatment of their Claims under the Plan, including the possibility that their Claims may not be paid in full.[28]

---

[27] 11. U.S.C. § 1129(a)(9).

[28] *See In re Teligent, Inc.*, 282 B.R. 765, 768 (Bankr. S.D.N.Y. 2002) (finding that "[t]he debtors could not … satisfy § 1129(a)(9) … except to the extent that a particular administrative creditor agreed to a different treatment" and further finding that "Congress's use of the word 'agree' in section 1129(a)(9) of the Bankruptcy Code should be interpreted to include implied consent").

Interwoven\3764371.6

Accordingly, because Local 1181 and the NLRB have agreed to the treatment of their Claims as provided in the Plan, and because there will be sufficient funds to pay all other Allowed Priority Non-Tax Claims in full, section 1129(a)(9)(B) of the Bankruptcy Code is satisfied.

### (3) 1129(a)(9)(C)

52. The Plan provides Priority Tax Claims (*i.e.*, claims under § 507(a)(8)) treatment that directly comports with section 1129(a)(9)(C).  Plan Art. III, Section 3.3.[29]

### (4) 1129(a)(9)(D)

53. Consistent with 1129(a)(9)(D), the Plan provides any governmental agencies holding Secured Claims that would be entitled to the treatment in section 507(a)(8) (but for being secured) the same treatment that is set forth in section 1129(a)(9)(C).  *See* Plan, Art. V, Section 5.1.4.[30]

54. Accordingly, the Plan satisfies the requirements set forth in section 1129(a)(9) of the Bankruptcy Code.

---

[29] Plan Art. III, Section 3.3. provides as follows:  "Except to the extent that a Holder of an Allowed Priority Tax Claim has been paid on account of such Allowed Priority Tax Claim prior to the Effective Date of the Plan or agrees to different treatment, each Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, release, and compromise of its Allowed Priority Tax Claim, a distribution of Cash from the Consummation Account in an amount that is equal to such Allowed Priority Tax Claim, without interest, on or as soon as reasonably practicable after the latest to occur of: (a) the Effective Date; (b) the first Business Day after the date that is ten (10) Business Days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim; and (c) the date or dates agreed to by the Liquidating Trustee and the Holder of the Allowed Priority Tax Claim.  All distributions on account of Allowed Priority Tax Claims from the Consummation Account shall be made by the Debtors. Any Claim or demand for a penalty relating to any Priority Tax Claim (other than a penalty of the type specified in section 507(a)(8)(G) of the Bankruptcy Code) shall be Disallowed, and the Holder of a Priority Tax Claim shall not assess or attempt to collect such penalty from the Debtors, their respective Estates, Assets or properties; *provided, however*, that the foregoing provision shall not apply to the IRS."

[30] Plan, Art. V, Section 5.1.4. provides as follows: "On the Effective Date, or as soon thereafter as is reasonably practicable, each Holder of an Allowed Other Secured Claim shall receive, in full and final satisfaction, settlement, release, and compromise of its Allowed Other Secured Claim, one of the following treatments: (i) reinstatement of any such Allowed Other Secured Claim pursuant to section 1124 of the Bankruptcy Code; (ii) the payment of such Holder's Allowed Other Secured Claim in full in Cash from the proceeds of the sale or other disposition of such Collateral to the extent not already distributed pursuant to an order of the Bankruptcy Court; (iii) the surrender by the Debtors or the Liquidating Trustee, as applicable, to the Holder or Holders of any Allowed Other Secured Claim of the property securing such Allowed Other Secured Claim; or (iv) such other distributions as shall be necessary to satisfy the requirements of chapter 11 of the Bankruptcy Code."

J.     **The Plan Has Been Accepted By At Least One Impaired Class
       Of Claims That Is Entitled To Vote – 11 U.S.C. § 1129(a)(10)**

55. Section 1129(a)(10) of the Bankruptcy Code requires that, if a class of claims is impaired under a plan, at least one class of impaired claims must have voted to accept the plan, as determined without including any acceptance of the plan by any insider.  As set forth in the Lee Certification, the Holders of Claims in Classes 2, 3, 5 and 6, as determined without including any acceptance by any insider in such Class, have each voted to accept the Plan. Lee Cert. ¶ 13. Accordingly, the requirements of section 1129(a)(10) of the Bankruptcy Code have been satisfied.

K.     **The Plan Is Feasible – 11 U.S.C. § 1129(a)(11)**

56. Section 1129(a)(11) of the Bankruptcy Code requires the Court to determine that:

> Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

11 U.S.C. § 1129(a)(11).

57. The Plan provides for the liquidation of the Debtors' remaining assets and distribution of proceeds to stakeholders.  The Plan sets forth certain Cash payments that the Debtors and/or the Liquidating Trustee must make after the Effective Date.  Those include payments to Holders of Allowed Administrative Claims, Allowed Priority Tax Claims,  Allowed Priority Non-Tax Claims and Allowed Secured Claims.  Plan, Art. III, V.  There are no outstanding amounts owed by the Debtors to Wells Fargo under the DIP Credit Facility, other than with respect to the Supplemental Loans. To the extent any DIP Claims remain unpaid as of the Effective Date, however, such unpaid amounts shall be paid by the Debtors to Wells Fargo in cash on the Effective Date from the Consummation Account. The Debtors' current cash balance

23

is sufficient to cover all administrative and priority tax claims due to be paid by the Debtors pursuant to the Plan on or after the Effective Date and the Debtors therefore believe that they will be able to meet all such obligations.  Carpenter Decl. ¶ 26.  To the extent that the Debtors' current cash balance is insufficient to pay certain budgeted administrative expenses, including claims under section 503(b)(9) of the Bankruptcy Code and the fees and expenses incurred by the professionals retained by the Debtors and the Committee, the Noteholders have agreed to use the proceeds of their collateral for the payment of such budgeted administrative expenses.[31]

58. With respect to the remaining creditors entitled to a recovery under the Plan, distributions shall be made first to Holders of Allowed Claims in Class 2 – Priority Non-Tax Claims – from the Other GUC Escrow, and if the Other GUC Escrow is exhausted, the proceeds of any and all other Liquidating Trust Assets not allocated to the Allowed Noteholders Claims, until Holders of Allowed Claims in Class 2 have been paid in full. Then, and only then, shall distributions be made to Holders of Allowed Claims in Classes 5 and 6.[32]

59. Holders of Allowed Claims in Class 3, the Noteholders Claims, shall receive (i) proceeds from the sale or other disposition of collateral subject to the Indenture Trustee's Liens (as defined in the Plan) to the extent not already paid, subject to adjustments as described in the Plan; and (ii) a right to seventy percent (70%) of the proceeds, if any, in the Other Liquidating Trust Fund Escrow (as defined in the Plan), subject to adjustments as described in the Plan.

60. The above analysis is premised on the Court granting the *Debtors' Motion Pursuant to 11 U.S.C. § 502(c)(1) to Estimate the Unliquidated Administrative Claim of AIG Specialty Insurance Company, et al. for Purposes of Establishing Feasibility of Chapter 11 Plan*

---

[31] *See Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Enter into Seventh Amendment to the Ratification Agreement, (II) Approving the Budget and (III) Amending Certain Provisions of the Final DIP Order* [ECF No. 870] at ¶ 11(d).

[32] *See* Section I, *supra*.

[ECF No. 1279], by which the Debtors seek to estimate the amount of the administrative claim filed by AIG Specialty Insurance Company ("AIG") at zero for purposes of demonstrating that the Plan is feasible and satisfies the requirements of section 1129(a) of the Bankruptcy Code. In response, AIG filed its *Opposition of Certain AIG Companies to Debtors' Motion Pursuant to 11 U.S.C. § 502(c)(1) to Estimate the Unliquidated Administrative Claim of AIG Specialty Insurance Company, et al., for Purposes of Establishing Feasibility of Chapter 11 Plan* [ECF No. 1318] and the Plan Proponents filed (i) the *Reply in Support of Debtors' Motion Pursuant to 11 U.S.C. § 502(c)(1) to Estimate the Unliquidated Administrative Claim of AIG Specialty Insurance Company, et al. for Purposes of Establishing Feasibility of Chapter 11 Plan* [ECF No. 1337] and (ii) *Joinder of the Official Committee of Unsecured Creditors to Debtors' Motion Pursuant to 11 U.S.C. § 502(c)(1) to Estimate the Unliquidated Administrative Claim of AIG Specialty Insurance Company, et al. for Purposes of Establishing Feasibility of Chapter 11 Plan* [ECF No. 1339]. A hearing on this matter is scheduled for Monday, June 9, 2014, at 11:00 a.m. (prevailing Eastern time).

61. Accordingly, the Plan is feasible and meets the requirements of section 1129(a)(11) of the Bankruptcy Code.

### L. The Plan Provides For Full Payment Of All Statutory Fees – 11 U.S.C. § 1129(a)(12)

62. Section 1129(a)(12) of the Bankruptcy Code requires that fees payable under 28 U.S.C. § 1930 have been paid or are provided under the plan to be paid on the Effective Date. To the extent not already paid, the Debtors shall pay the U.S. Trustee Fees due and owing before the Effective Date. On and after the Effective Date, the Liquidating Trustee shall pay the U.S. Trustee Fees as they become due and owing until the earliest to occur of: (a) the Bankruptcy Court enters an order of final decree closing the Chapter 11 Cases; (b) the Bankruptcy Court

25

enters an order converting the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code; and (c) the Bankruptcy Court enters an order dismissing the Chapter 11 Cases. Plan, Art. III, Section 3.4. Thus, the Plan complies with the requirements of section 1129(a)(12) of the Bankruptcy Code.

        M.       **The Plan Provides For The Continuance Of<br>Retiree Benefit Obligations – 11 U.S.C.§ 1129(a)(13)**

63. Section 1129(a)(13) of the Bankruptcy Code requires a plan to provide for the continuation of retiree benefits at levels established pursuant to section 1114 of the Bankruptcy Code. The Debtors have terminated, or will have terminated, their participation in all pension plans on or before the Effective Date, other than the Debtors' 401(k) plan. The Debtors intend to seek to terminate the 401(k) plan and distribute the funds held in the 401(k) plan to the beneficiaries as soon after the Effective Date as is reasonably practicable. Carpenter Decl. ¶ 31. Thus, section 1129(a)(13) of the Bankruptcy Code does not apply and is deemed satisfied.

        N.       **The Debtors Have No Domestic Support Obligations, Are Not Individuals<br>And Are Not Nonprofit Entities – 11 U.S.C. §§ 1129(a)(14), (15) & (16)**

64. Section 1129(a)(14) of the Bankruptcy Code requires the payment of certain domestic support obligations; the Debtors have none and, therefore, section 1129(a)(14) is inapplicable and deemed satisfied. Section 1129(a)(15) of the Bankruptcy Code imposes certain payment obligations on individual debtors; the Debtors are not individuals and, therefore, section 1129(a)(15) is inapplicable here. Section 1129(a)(16) of the Bankruptcy Code applies to transfers by "a corporation or trust that is not a moneyed, business, or commercial corporation or trust." 11 U.S.C. § 1129(a)(16). The legislative history of section 1129(a)(16) of the Bankruptcy Code demonstrates that this section was intended to "restrict the authority of a trustee to use, sell, or lease property by a nonprofit corporation or trust." *See* H.R. Rep. No. 109-31, 109th Cong. 1st

Sess. 145 (2005); *In re Sea Launch Co., L.L.C.*, 2010 Bankr. LEXIS 5283 at 41(Bankr. D. Del. July 30, 2010) ("Section 1129(a)(16) by its terms applies only to corporations and trusts that are not moneyed, business, or commercial.") (internal citation omitted). Accordingly, section 1129(a)(16) is inapplicable to the Debtors.

O.  **The Plan Satisfies The Cram-Down Requirements – 11 U.S.C. § 1129(b)**

65. Section 1129(b) of the Bankruptcy Code provides that, if all the requirements of section 1129(a) of the Bankruptcy Code are satisfied, other than the requirement of acceptance by all impaired classes under section 1129(a)(8) of the Bankruptcy Code, a plan nevertheless may be confirmed so long as the plan "does not discriminate unfairly" and is "fair and equitable" with respect to impaired, non-consenting classes.  11 U.S.C. § 1129(b)(1).

66. The Plan is confirmable under section 1129(b) because the Rejecting Class (Class 7, Interests) can be crammed-down.

1.  **The Plan Does Not Discriminate Unfairly Against Any Class**

67. The prohibition against unfair discrimination is intended to "ensure[ ] that a dissenting class will receive relative value equal to the value given to all other similarly situated classes. Thus a plan proponent may not segregate two similar claims or groups of claims into separate classes and provide disparate treatment for those classes."  *In re Johns-Manville*, 68 B.R. at 636; *see also In re Armstrong World Indus., Inc.*, 348 B.R. 111, 121 (D. Del. 2006) (*citing In re Johns-Manville* and stating that the "hallmarks of the various tests have been whether there is a reasonable basis for the discrimination, and whether the debtor can confirm and consummate a plan without the proposed discrimination."); *In re Buttonwood Partners, Ltd.*, 111 B.R. 57, 63 (Bankr. S.D.N.Y. 1990) (same).

68. The Plan does not unfairly discriminate against any Class.  The Interests in Class

27

7 are legally and factually distinct from other Claims in other Classes and are properly classified in a separate Class. Carpenter Decl. ¶ 32. Class 7 is the only Class that contains Interests; all others contain Claims.

69. Accordingly, the Plan does not unfairly discriminate.

2. **The Plan is Fair and Equitable**

70. For a plan to be "fair and equitable" with respect to an impaired class of unsecured claims or interests that rejects a plan (or is deemed to reject a plan), the plan must follow the "absolute priority" rule. This means that, if the impaired rejecting class consists of unsecured claims, the plan must satisfy one of the requirements of section 1129(b)(2)(B). If the impaired rejecting class consists of interests, the Plan must satisfy one of the requirements of section 1129(b)(2)(C).[33] Generally, this requires that (a) no class of claims recover more than the amount of their allowed claims and (b) the impaired rejecting class of claims or interests either be paid in full or that any class junior to the impaired accepting class not receive any distribution under a plan on account of its junior claim or interest.[34]

71. The Plan satisfies sections 1129(b)(2)(B) and 1129(b)(2)(C) for Class 7 because (a) no Claim or Interest junior to the Interests in Class 7 will receive or retain any property under the Plan on account of such junior Claim or Interest; and (b) no Classes will receive more than full payment on account of their Claims. *See* Carpenter Decl. ¶ 33.

72. Accordingly, the requirements of section 1129(b) are satisfied with respect to the

---

[33] 11 U.S.C. § 1129(b)(2)(B)(ii); 11 U.S.C. § 1129(b)(2)(C)(ii); *see also LaSalle*, 526 U.S. at 441-42 ("As to a dissenting class of impaired unsecured creditors, such a plan may be found to be 'fair and equitable' only if the allowed value of the claim is to be paid in full, § 1129(b)(2)(B)(i), or, in the alternative, if 'the holder of any claim or interest that is junior to the claims of such [impaired unsecured] class will not receive or retain under the plan on account of such junior claim or interest any property,' § 1129(b)(2)(B)(ii). That latter condition is the core of what is known as the 'absolute priority rule.'").

[34] *See id.*

Interwoven\3764371.6

Rejecting Class.

      P.      **The Plan Is The Only Plan Filed In**
                **The Chapter 11 Cases – 11 U.S.C. § 1129(c)**

73. Section 1129(c) of the Bankruptcy Code provides that, with a limited exception, a bankruptcy court may only confirm one plan. The Plan is the only plan that has been filed in the Chapter 11 Cases and is the only plan that satisfies the requirements of subsections (a) and (b) of section 1129 of the Bankruptcy Code. Accordingly, the requirements of section 1129(c) of the Bankruptcy Code are satisfied.

      Q.      **The Principal Purpose Of The Plan Is Not To Avoid Taxes**
                **Or Section 5 Of The Securities Act – 11 U.S.C. § 1129(d)**

74. Section 1129(d) of the Bankruptcy Code provides that on request of a party in interest that is a governmental unit, the bankruptcy court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or of the application of section 5 of the Securities Act. The Plan was not proposed to avoid taxes, and no stakeholder has argued otherwise. *See* Carpenter Decl. ¶ 35. Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

**II.     THE ASSUMPTION AND ASSIGNMENT OR REJECTION OF THE EXECUTORY CONTRACTS AND UNEXPIRED LEASES UNDER THE PLAN SHOULD BE APPROVED**

75. The Plan allows for the assumption of the executory contracts and unexpired leases identified by the Debtors. Plan, Art. X. The Debtors have indicated that they do not anticipate assuming or assuming and assigning any executory contracts or unexpired leases in connection with the Plan. *See* Plan Supplement, Exhibit C [ECF No. 1242]. The Plan further provides: "On the Effective Date, except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease not previously rejected, assumed or assumed and assigned with the approval of the Bankruptcy Court shall be deemed automatically rejected pursuant to sections

29

365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (i) is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan Supplement; (ii) is subject to a pending motion to assume such Executory Contract or Unexpired Lease as of the Effective Date; (iii) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; or (iv) is an insurance policy, performance bond or surety bond. For the avoidance of doubt, the provisions of the Plan shall not diminish or impair in any manner the enforceability and/or coverage of any insurance policy, performance bond or surety bond maintained by or for the benefit of any of the Debtors." Plan, Art. X, Section 10.1.

76. Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease . . . ." 11 U.S.C. § 365(a). Courts routinely approve motions to assume and assign or reject executory contracts or unexpired leases upon a showing that the debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment. *See Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993), *cert. dismissed*, 511 U.S. 1026 (1994) (stating that section 365 of the Bankruptcy Code "permits the trustee or debtor-in-possession, subject to the approval of the bankruptcy court, to go through the inventory of executory contracts of the debtor and decide which ones it would be beneficial to adhere to and which ones it would be beneficial to reject"); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) (stating that the traditional standard applied by courts to authorize the rejection of an executory contract is that of "business judgment"); *In re Gucci*, 193 B.R. 411, 415-16 (S.D.N.Y. 1996) ("business judgment" test should be applied to assumption and rejection decisions); *Nostas Assocs. v. Costich (In re Klein Sleep Prods., Inc.)*,

78 F.3d 18, 25 (2d Cir. 1996) (same).

77. The Debtors, in consultation with the Committee, have reviewed and analyzed their portfolio of executory contracts and unexpired leases. Given that the Debtors have ceased all business operations and will dissolve following the Effective Date of the Plan, the Debtors have concluded that, subject to the exceptions listed in Section 10.1. of the Plan, all of their executory contracts and unexpired leases, to the extent not already rejected, should be rejected on the Effective Date. Carpenter Decl. ¶ 41.

78. Accordingly, for all of the foregoing reasons, the Plan provisions regarding rejection of executory contracts and unexpired leases should be approved in connection with confirmation.

## III. THE SUBSTANTIVE CONSOLIDATION OF THE DEBTORS BENEFITS CREDITORS AND SHOULD BE APPROVED

79. The Plan provides for a substantive consolidation of the Estates for purposes of confirming, consummating and administering the Plan. Plan, Art. VII, Section 7.1. Accordingly, the Plan contemplates that (i) no distributions shall be made under the Plan or Liquidating Trust Documents on account of the Intercompany Claims, if any, among the Debtors, (ii) the Assets and liabilities of the Debtors will be deemed to be the Assets and liabilities of a single, consolidated entity, (iii) each and every Claim filed or to be filed in the Chapter 11 Cases against any Debtor shall be considered filed against the consolidated Debtors and shall be considered one Claim against and obligation of the consolidated Debtors on and after the Effective Date, (iv) all joint obligations of two or more Debtors, and all multiple Claims against such entities on account of such joint obligations, are considered a single Claim against the consolidated Debtors, and (v) all guaranties by any of the Debtors of the obligations of any Debtor arising prior to the Effective Date shall be deemed eliminated under the Plan so that any

31

Claim against any Debtor and any guaranty thereof executed by any other Debtor and any joint and several liability of any of the Debtors shall be deemed to be one obligation of the deemed consolidated Debtors. *Id.*

80. Bankruptcy courts routinely approve substantive consolidation in chapter 11 plans.[35]   In the Second Circuit, whether substantive consolidation is appropriate is based upon a review of two critical factors: "(i) whether creditors dealt with the entities as a single economic unit and 'did not rely on their separate identity in extending credit' or (ii) whether the affairs of the Debtors are so entangled that consolidation will benefit all creditors." *Union Sav. Bank v. Augie/Restivo Baking Co., Ltd. (In re Augie/Restivo Baking Co., Ltd.)*, 860 F.2d 515, 518 (2d Cir. 1988) (herein, "*Augie/Restivo*").

81. Notably, the *Augie/Restivo* test requires that substantive consolidation should be ordered when either factor is satisfied.  *See Official Comm. of Unsecured Creditors of Verestar, Inc. v. Am. Tower Corp. (In re Verestar, Inc.)*, 343 B.R. 444, 462-63 (Bankr. S.D.N.Y. 2006) (noting that *Augie/Restivo* test is disjunctive).   Substantive consolidation is, therefore, not precluded even if the court determines that some of the creditors knew they were dealing with separate entities, thus failing to establish the first *Augie/Restivo* factor.  *See In re 599 Consumer Elecs., Inc.*, 195 B.R. 244, 248 (S.D.N.Y. 1996).Therefore, even if the first *Augie/Restivo* factor cannot be met, substantive consolidation can be warranted based on the finding that unscrambling the debtors' separate finances may be so significant "as to threaten the realization of any net assets for all the creditors." *Id.* at 250.

82. The Plan Proponents believe there is overwhelming evidence that substantive

---

[35] Such authority arises both under § 105(a) and § 1123(a)(5)(C) of the Bankruptcy Code. *See* 11 U.S.C. § 1123(a)(5)(C) (stating that "[n]otwithstanding any otherwise applicable nonbankruptcy law, a plan shall . . . provide adequate means for the plan's implementation, such as . . . consolidation of the debtor with one or more persons . . .); *see In re Calpine Corp.*, 2007 Bankr. LEXIS 4390, at *22-23 (Bankr. S.D.N.Y. Dec. 19, 2007) (entering confirmation order citing section 1123(a)(5)(C) as statutory support for substantive consolidation).

consolidation will benefit creditors and is in line with creditor expectations. First, the evidence shows that major creditors, including Wells Fargo and the Noteholders, did not rely upon the separate identities of the Debtors when making credit decisions and that credit extended to the Debtors by such parties was secured by substantially all of the assets of all of the Debtors. Carpenter Decl. ¶ 44. As such, the first *Augie/Restivo* factor weighs in favor of substantive consolidation under the Plan.

83. Second, the affairs of the Debtors are so entangled that consolidation benefits all creditors.[36] As set forth in the Carpenter Declaration, the following facts demonstrate the costs and burdens avoided by consolidation:

- The Debtors operated a consolidated cash management system and filed their tax returns on a consolidated basis. *See* Carpenter Decl. ¶ 45.

- While the Debtors' accounting systems, books, and records were kept on an individual basis, they were never reported on an individual Debtor entity basis, except for as required by the Bankruptcy Code or for purposes of filing tax returns. *Id*.

- Each of the operating Debtors was obligated under the same credit facilities, including the Prepetition Credit Facility and the Notes. *Id.*

84. All forty Debtors involved in these Chapter 11 Cases operate under one consolidated cash management system. *See Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, and (C) Maintain Existing Bank Accounts; and (II) Granting Priority Status to Postpetition Intercompany Claims* [ECF No. 12]. AETC, the ultimate corporate parent company to all other 39 Debtors, maintains and controls all cash, with

---

[36] An analysis of the second *Augie/Restivo* factor often entails a review of relevant evidence. *In re Leslie Fay Cos.*, 207 B.R. at 780 (referencing record adduced at confirmation hearing that "the debtors' operations, cash, and decision-making were all shared such that it would be detrimental to the estates to attempt to disentangle those operations" in ordering substantive consolidation).

33

the exception of petty cash and payroll amounts, on a consolidated basis on behalf all such entities. Virtually all payments of debts owed by any and all of the Debtors, including payments on account of joint liabilities as well as individual Debtor liabilities, are made from the consolidated cash accounts. Although the Debtors have always accounted for the intercompany payables and receivables arising out of the use of the consolidated cash management system, as well as allocated for liabilities and expenses that are shared and prorated among two or more Debtor entities, all financial reporting has been done on a consolidated basis.

85. The Debtors believe that the methods by which they have historically accounted for intercompany transactions and allocated for assets, liabilities and shared expenses are reasonable and appropriate. *See* Carpenter Decl. ¶ 47. Nonetheless, there is no easily discernable way to allocate the proceeds from the sale of assets and the liabilities of each Debtor entity for purposes of creditor distributions without expending substantial time and expense. *Id.* It is estimated that hundreds, if not thousands, of hours of efforts by accountants and lawyers would be necessary to verify the methods underlying the historical system used by the Debtors and to prepare a recovery waterfall for each of the 40 Debtor entities.

86. Requiring the Plan to be administered on a non-consolidated basis would render the global settlement reached in these Chapter 11 cases all but unworkable. The Other GUC Escrow, which has been established in the amount of $1 million, may prove to be the only significant source of recovery for unsecured creditors. Any requirement for the Plan Proponents to allocate the funds in the Other GUC Escrow among the 40 individual Debtors' estates would vastly increase the administrative expenses of the Debtors' estates. In order to allocate funds in the Other GUC Escrow to each individual Debtor entity, the Plan Proponents would need to evaluate not only the assets and liabilities of each individual Debtor, but would also need to

34

place a valuation on such Debtor entity. Additionally, the Debtors might have to continue to account for their finances on a Debtor-to-Debtor basis during the post-consummation period. Each of the foregoing, combined with the costs associated with verifying and unwinding the historical accounting system, would increase the administrative expenses in these cases to a degree that would impair creditor recoveries.

87. In sum, the Debtors' affairs are so significantly entangled that the process of allocating the proceeds from the sale of assets and allowable claims held by creditors among the 40 Debtors in these cases would be prohibitively expensive. The Debtors would encounter substantial difficulties and extensive and costly delays if an effort was made to perform the work necessary to seek confirmation of separate plans of liquidation for each of the Debtors. In fact, performing such work could render the Debtors' estates administratively insolvent. This is a clear case where substantive consolidation will enhance recoveries for creditors as a whole and facilitate implementation of the Plan. Accordingly, the substantive consolidation proposed in the Plan should be approved.

IV.    **THE PLAN RELEASES, EXCULPATIONS AND INJUNCTIONS ARE APPROPRIATE AND CONSISTENT WITH ESTABLISHED PRECEDENT**

88. Article XII of the Plan provides certain releases, exculpation and related injunctions. For the reasons set forth below, each provision is proper and supported by well-established precedent.

A.    **The Releases Are Proper.**

89. The Plan contains two categories of releases. First, the Plan contains releases by the Debtors, their Estates and any entity seeking to exercise the rights of the Debtors' Estates, including the Liquidating Trustee on behalf of the Liquidating Trust, (collectively, the

"Debtors/Estates Releases") granted to the Noteholders, the Indenture Trustee, Wells Fargo, Wayzata (including its Affiliates and managed funds), Blue Wolf (including its Affiliates and managed funds), the lenders under the DIP Credit Facility and Related Persons of any of the foregoing, and each of the Debtors' current and former members, managers, officers, directors, attorneys (whether engaged prior to or subsequent to the Petition Date) and Rothschild, Inc. as financial advisor to the Debtors (collectively, the "Released Parties").  Plan, Art. XII, Section 12.4.1. and Section 1.1.102. (definition of "Released Parties").

90. Second, the Plan contains releases granted to the Released Parties by Holders of Claims in Classes 2, 3, 5 and 6 that vote to accept the Plan and who voluntarily elect on their respect ballots not to opt-out to the granting of the releases set forth in section 12.4.2. of the Plan (collectively, the "Creditor Releases").  Plan, Art. XII, Sections 12.4.2.; *see also* Plan, Art. I, Section 1.1.30. (definition of "Creditor Releasing Parties).

91. The Debtors/Estates Releases only release claims held by the Debtors and their Estates (and the Liquidating Trust, which is their successor).  Plan, Art. XII, Section 12.4.1.  The Debtors/Estates Releases contain standard carve-outs for any claims or causes of action of any Debtor or their respective estate against a Released Party (i) arising under any contractual obligation owed to the Debtors that is entered into or assumed pursuant to the Plan or (ii) which results from any act or omission that is judicially determined pursuant to a Final Order to have resulted from such Released Party's fraud, willful misconduct or gross negligence.  *Id.*  Such releases by debtors are routinely approved in chapter 11 plans.  *See, e.g.*, *In re Mesa Air Group, Inc.*, Case No. 10-10018 (MG), 2011 Bankr. LEXIS 189 (Bankr. S.D.N.Y. Jan. 20, 2011) (approving releases without objection); *In re CIT Group Inc.*, Case No. 09-16565 (ALG), 2009 Bankr. LEXIS 4026 (Bankr. S.D.N.Y. Dec. 8, 2009) (approving releases without objection).

92. The Creditor Releases release claims held by the Creditor Releasing Parties, which are those Holders of Claims in Classes 2, 3, 5 and 6 that vote to accept the Plan and who voluntarily elect on their respect ballots not to opt-out to the granting of the releases set forth in section 12.4.2. of the Plan. The Creditor Releases are entirely consensual, as Holders of Claims in Classes 2, 3, 5 and 6 have the option of granting or not granting the Creditor Releases. The Second Circuit has ruled that nondebtor releases are permissible where, as here, the affected creditors consent to the releases. *Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 142 (2d Cir. 2005) (stating that "[n]ondebtor releases may also be tolerated if the affected creditors consent") (citing *In re Specialty Equip. Cos.*, 3 F.3d 1043, 1047 (7th Cir. 1993) (holding "releases that are consensual and non-coercive to be in accord with the strictures of the Bankruptcy Code"); *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 267 (Bankr. S.D.N.Y. 2007) (stating that "nondebtor releases may also be tolerated if the affected creditors consent").

93. Moreover, the ballots included (i) a full copy of Section 12.4.2. of the Plan, in bold, which is the provision of the Plan that provides for the Creditor Releases and (ii) the following disclaimer language: "Section 12.4.2 of the Plan provides for releases of certain parties. Check the Opt-Out box below if you elect **not** to grant those releases. <u>You may check this box even if you have voted to accept the Plan</u>. If you submit your Ballot without this box checked, you will be deemed to consent to the releases set forth in Article 12 of the Plan to the fullest extent permitted by the applicable law. Whether or not you elect to grant the releases will have no bearing on your right to receive a distribution in these chapter 11 cases." *See* Disclosure Statement, Form Ballots, Exhibits F-1 – F-4 (emphasis in original). The Plan Proponents also set off the language of the Creditor Releases in bold in both the Plan and the Disclosure Statement.

37

Moreover, the Creditor Releases contain similar standard carve-outs as the Debtors/Estates Releases. Courts in this District have approved releases similar to the Creditor Releases under similar circumstances. *See e.g.*, *In re Oldco M Corp.*, Case No. 09-13412, 2010 Bankr. LEXIS 2372, at *29 (Bankr. S.D.N.Y. Feb. 23, 2010); *JPMorgan Chase Bank, N.A. v. Charter Commc'ns Operating LLC (In re Charter Commc'ns)*, 419 B.R. 221, 242 (Bankr. S.D.N.Y. 2009); *In re Calpine Corp.*, No. 05-60200, 2007 Bankr. LEXIS 4390, at *27 (Bankr. S.D.N.Y. Dec. 19, 2007).

94. As stated above, circumstances exist in these Chapter 11 Cases that warrant the approval of the third party releases. As discussed in Section 4.10 of the Disclosure Statement, the Debtors' Estates are receiving substantial consideration from the Released Parties under the Global Settlement[37]. The third-party releases in favor of the Released Parties are in furtherance of the Global Settlement and will only be binding on creditors that consent, or who are deemed to consent, to the granting of such releases on their ballots. As provided above, creditors may vote in favor of the Plan and opt out of granting the third-party releases.

95. In addition, as discussed in Section 4.11 of the Disclosure Statement, the Agent and Supplemental Loan lenders have provided significant consideration for the releases by funding the $1 million payment to the Other GUC Escrow from cash collateral that would otherwise have been used to repay the Supplemental Loans and by consenting to the use of cash collateral in accordance with the DIP budget to fund the costs of the Debtors' wind down and the Chapter 11 Cases, including Professional Fee Claims subject to the Aggregate Cap (as

---

[37] The "Global Settlement" is defined in the Disclosure Statement as the Settlement Term Sheet, dated February 24, 2014, by and among Debtors, the Committee, Wells Fargo and Wayzata, a copy of which is attached as Exhibit B to the *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Enter into Seventh Amendment to the Ratification Agreement, (II) Approving the Budget and (III) Amending Certain Provisions of the Final DIP Order* [ECF No. 870].

defined in the DIP Credit Facility), with funds that otherwise would have been used to pay the Supplemental Loan. The Indenture Trustee and the Noteholders have also provided significant consideration for the releases by consenting to the use of cash collateral for the funding of the Other GUC Escrow and agreeing not to assert the Noteholders Deficiency Claims against those funds, consenting to the use of cash collateral in accordance with the DIP budget to fund the costs of the Debtors' wind down and the Chapter 11 Cases, including Professional Fee Claims subject to the Aggregate Cap (as defined in the DIP Credit Facility), and authorizing the use of a portion of the proceeds from the sale of Noteholders' Collateral to pay such costs in the event that there is insufficient cash.

96. The Debtors, the Creditors' Committee, Blue Wolf, Wayzata and the Noteholders devoted significant time and energy to arrive at a consensual plan. The Released Parties include parties whose economic contributions, cooperation and efforts have been essential to developing the transactions reflected in the Plan. In light of the substantial contributions made by the Released Parties and the consensual nature of the third party releases, the Plan Proponents submit that the proposed third-party releases are appropriate under the circumstances of these Chapter 11 Cases, are well- supported by applicable precedent and should be approved.

B. **The Exculpation Provisions Are Proper.**

97. The Plan exculpates the Debtors, the Committee, the Noteholders, the Indenture Trustee, Wells Fargo, Wayzata (including its Affiliates and managed funds), Blue Wolf (including its Affiliates and managed funds), the lenders under the DIP Credit Facility, and Related Persons of any of the foregoing (collectively, the "Exculpated Parties") from any liability relating to the Chapter 11 Cases and acts and occurrences related to same (the "Exculpations"). Plan, Art. XII, Section 12.7., *see also* Plan, Art. I., Section 1.1.44. (defining

39

Exculpated Parties).  The Exculpations contain similar standard carve-outs as the Debtors/Estates Releases.  *Id.*

98. Exculpation provisions that are limited to protect certain parties and some or all of their efforts during bankruptcy cases are routinely approved as consistent with the protection afforded by section 1125(e) of the Bankruptcy Code.  *See, e.g.*, *In re CIT Group Inc.*,  No. 09-16565, 2009 Bankr. LEXIS 4026, at *14 (Bankr. S.D.N.Y. Dec. 8, 2009) (finding that "[a]ll persons who solicited votes on the Plan," were "entitled to the protections afforded by section 1125(e) of the Bankruptcy Code as well as the exculpation and limitation of liability provisions" in the proposed plan of reorganization); *In re Delphi Corp.*, No. 05-44481, 2009 Bankr. LEXIS 4663, at *51 (Bankr. S.D.N.Y. July 30, 2009) (finding that "[t]he Debtors and their agents, representatives, attorneys, and advisors, and other Persons involved in the resolicitation process ... are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions" in the approved chapter 11 plan); *In re Dana Corp.*, No. 06-10354 2007 Bankr. LEXIS 4404, at *17 (Bankr. S.D.N.Y. Dec. 26, 2007) (finding that "the Debtors are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions" in the approved chapter 11 plan).

99. The scope of the Exculpations is consistent with similar provisions approved by courts in this District.  *See, e.g.*, *In re Oneida Ltd.*, 351 B.R.79, 94 n.22 (Bankr. S.D.N.Y. 2006) (approving exculpation provision that covered prepetition lenders, DIP lenders, creditor committees and their members and the respective affiliates of each except in cases of gross negligence, willful misconduct, fraud or criminal conduct and noting that the language of the exculpation provision "generally follows the text that has become standard in this district" and was "sufficiently narrow to be unexceptionable")*; see also In re Oldco M Corp.*, 2010 Bankr.

40

LEXIS 2372, at *34-35; *In re AMR Corp.*, Case No. 11-15463 (SHL) (Bankr. S.D.N.Y. Oct. 22, 2013) (approving exculpation provisions in confirmed plan); *In re Terrestar Corp.* (SHL), Case No. 11-10612 (Bankr. S.D.N.Y. Oct. 24, 2012) (same); *In re BearingPoint, Inc.*, Case No. 09-10691 (REG) (Bankr. S.D.N.Y. Dec. 22, 2009) (approving exculpation provisions in confirmed plan); *In re Mark IV Indus., Inc.*, Case No. 09-12795 (SMB) (Bankr. S.D.N.Y. Sept. 23, 2009) (same); *In re PRC, LLC*, Case No. 08-10239 (MG) (Bankr. S.D.N.Y. Jun. 20, 2008) (approving plan containing exculpation provisions).

100.    Accordingly, the Exculpations should be approved.

## V.  **ALL OBJECTIONS TO THE PLAN HAVE BEEN RESOLVED**

101.    Only two parties filed objections to the confirmation of the Plan: (i) the New York City Department of Education [ECF No. 1296] and (ii) Caterpillar Financial Services Corporation [ECF No. 1297], and both have been resolved.  The Debtors also received informal comments from certain of the Debtors' insurers, specifically AIG, ACE and Liberty Mutual, and the U.S. government, and each of their issues with respect to confirmation similarly have been resolved.

102.    The Plan Proponents resolved the objection of the New York City Department of Education by amending Sections 7.5 and 12.8 of the Plan, as reflected in the proposed order to be submitted confirming the Plan (the "Confirmation Order"). The text of Section 7.5 of the Plan will be replaced in its entirety by the following paragraph:

> The Liquidating Trustee may, but shall not be required to, pursuant to and to the extent permitted by applicable law, setoff or recoup against any Claim asserted against any Debtor or its Estate, and the payments or other distributions to be made pursuant to the Plan and Liquidating Trust Documents in respect of such Claim, any Claims, rights, or Cause of Action of any nature whatsoever that the Debtors or the Liquidating Trust may have against the Holder of such Claim pursuant to the Bankruptcy Code or applicable non-bankruptcy law (provided that, specifically with respect to the timely filed proofs of claim of the New York

41

City Department of Education, the payments or other distributions, if any, to be made pursuant to the Plan and the Liquidating Trust Documents in respect of such Claims, to the extent allowed, shall be calculated and paid based upon the setoff or recoupment by the Liquidating Trustee of the amount of such timely filed Claims against any Claims, rights, or Cause of Action that the Debtors or the Liquidating Trustee may have against the New York City Department of Education under applicable law); provided, however, that the Liquidating Trustee shall give the Holders of any such Claim notice of the proposed setoff or recoupment and the Holder of such Claim does not object to the proposed setoff or recoupment within thirty (30) days of the actual receipt of such notice; provided further that if an objection is timely raised to a proposed setoff or recoupment, the Liquidating Trustee may seek relief from the Bankruptcy Court to effectuate the setoff or recoupment and the holder of such Claim may oppose or otherwise respond to such relief; and provided further that neither the failure to effect a setoff or recoupment, nor the allowance of any Claim hereunder shall constitute a waiver, abandonment or release by the Liquidating Trustee of any such Claims, rights and Causes of Action that the Debtors or the Liquidating Trustee may have against the Holder of such Claim.

The following language will be added to Section 12.8 of the Plan:

Notwithstanding anything in the Plan or Confirmation Order to the contrary, and in particular Articles 12.3(d) and 12.8(a)(iv) of the Plan, any and all rights of the New York City Department of Education to assert a right of setoff, subrogation or contribution which are the basis of its timely filed proofs of claim, shall survive confirmation, subject to the right of the Debtors and the Liquidating Trustee to object to the allowance of such claims, and to the extent any such claim is allowed, until such claim is satisfied pursuant to the terms of the Plan.

103.       The Plan Proponents resolved the objection of Caterpillar Financial Services Corporation by adding language to the proposed Confirmation Order that specifies that all parties' rights are reserved with respect to the application of the Plan and/or section 1141(c) of the Bankruptcy Code to any rights Caterpillar Financial Services Corporation may have in the two vehicles for which they still hold title. Specifically, the following language will be added to the Confirmation Order:

Caterpillar Financial Services Corporation ("CAT Financial") has asserted ownership and/or lien interests in certain motorcoaches (the "Motorcoaches") identified by Vehicle Identification Numbers YE2CC18B052047059 and YE2CC18B952047058 (together, the "Alleged Interests"). The Debtors have disputed CAT Financial's position and claim that they were the owners of the Motorcoaches free of any of the Alleged Interests and that the Motorcoaches were

42

sold free and clear to a third party purchaser pursuant to Court approved miscellaneous sale procedures and CAT is obligated to deliver titles and/or lien releases for the Motorcoaches (the "Dispute"). CAT Financial and the Debtors have agreed to submit the Dispute to the Court but such Dispute will not be resolved prior to confirmation of the Plan. CAT Financial has objected to the Plan on the basis that certain provisions in the Plan and/or Section 1141(c) of the Bankruptcy Code may extinguish or impair the Alleged Interests before the Dispute may be resolved. The Plan Proponents hereby stipulate and agree that nothing contained in the Plan or Section 1141(c) of the Bankruptcy Code shall extinguish or impair the Alleged Interests or the rights of CAT Financial to seek to enforce or defend the Alleged Interests which shall survive confirmation of the Plan. Except as expressly provided herein, all other claims and defenses of the Debtors and CAT Financial relating to Alleged Interests and the Dispute are expressly reserved, including as may be subsequently asserted by any successor to the Debtors, including the Liquidating Trustee.

104. The Plan Proponents resolved the informal objections to confirmation of

AIG and ACE by adding the following language to the Confirmation Order:

Notwithstanding any other term or provision in the Plan or this Order, nothing in the Plan, this Order, any other document related to any of the foregoing or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening or grants an injunction or release) (i) will prejudice any of the rights, claims or defenses of Debtors' insurers ("Insurers") under any insurance policies under which the Debtors, the Estates, the Liquidating Trust, and/or the Liquidating Trustee seek(s) coverage (the "Policies") or any agreements related to the Policies (together, with the Policies, the "Insurance Agreements"); (ii) will modify any of the terms, conditions, limitations and/or exclusions contained in the Insurance Agreements, which terms, conditions, limitations and exclusions shall remain in full force and effect; (iii) shall be deemed to create any insurance coverage that does not otherwise exist, if at all, under the terms of the Insurance Agreements, or create any right of action against the Insurers that does not otherwise exist under applicable non-bankruptcy law; (iv) shall be deemed to prejudice any of the Insurers' rights and/or defenses in any pending or subsequent litigation in which the Insurers or the Debtors, the Estates, the Liquidating Trust, and/or the Liquidating Trustee may seek any declaration regarding the nature and/or extent of any insurance coverage under the Insurance Agreements; (v) shall be deemed to alter the continuing duties and obligations of any insured under the Insurance Agreements; or (vi) shall be construed as an acknowledgement that the Insurance Agreements cover or otherwise apply to any claims or that any claims are eligible for payment under any of the Insurance Agreements. Subject to the terms of the Insurance Agreements, the rights of the Debtors under the Insurance Agreements will vest in the Liquidating Trust on the Effective Date and the Insurers shall not refuse performance under the Insurance Agreements on the grounds that the Debtors

43

transferred rights under the Insurance Agreements; *provided, however*, with respect to any directors and officers or fidelity insurance policy, the Liquidating Trustee and the Liquidating Trust shall not be insureds under the policy. Nothing in this paragraph shall (i) limit the applicability of the injunctions provided under the Plan; *provided*, *however*, that such injunction provisions shall not affect an Insurer's right to set off, subrogation or recoupment in connection with any insurance or insurance services provided to the Debtors, nor bar any Insurer from seeking to arbitrate under an Insurance Agreement, (ii) preclude or impair the Debtors, the Liquidating Trust, the Liquidating Trustee or the Insurers from seeking relief from the Bankruptcy Court in the Chapter 11 Cases, or (iii) limit the ability of the Debtors, the Liquidating Trust or the Liquidating Trustee to object to, or seek estimation of, any Claim filed in the Chapter 11 Cases by an Insurer.

      105.      The Plan Proponents resolved the informal objection Liberty Mutual to confirmation by adding the following language to the Confirmation Order:

Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, any other Plan document or this Confirmation Order (collectively, the "Plan Documents"), nothing in the Plan Documents (including any provision that purports to be preemptory or supervening) shall in any way operate to, or have the effect of, impairing in any respect the legal, equitable or contractual rights and defenses of the insureds or insurers under any insurance policy issued by Liberty Mutual Insurance Company or its affiliates (collectively, "Liberty") for the benefit of the Debtors or their affiliates or any related agreement (collectively, the "Liberty Mutual Insurance Agreements") or under any applicable non-bankruptcy law, including without limitation Liberty's rights to draw on letters of credit issued for Liberty's benefit or to apply escrowed amounts held by Liberty, Liberty's rights of setoff and recoupment, and Liberty's rights to handle, control, direct and approve settlement of claims covered by the Liberty Mutual Insurance Agreements.

The rights and obligations of the insureds and the insurers shall be determined under the Liberty Mutual Insurance Agreements, including all terms, conditions, limitations and exclusions thereof, which shall remain in full force and effect, and any applicable non-bankruptcy law. Subject to the terms of the Plan Documents, the rights of the Debtors under the Liberty Mutual Insurance Agreements will vest in the Liquidating Trust on the Effective Date and Liberty shall not refuse performance under the Liberty Mutual Insurance Agreements on the grounds that the Debtors transferred rights under the Liberty Mutual Insurance Agreements. Except as expressly set forth in this paragraph, nothing in this paragraph shall (i) limit the applicability of the injunctions provided under the Plan, (ii) preclude or impair the Debtors, the Liquidating Trust, the Liquidating Trustee or Liberty from seeking relief from the Bankruptcy Court in the Chapter 11 Cases, nor (iii) limit the ability of the Debtors the Liquidating Trust or the Liquidating Trustee to object to, or seek estimation of, the Claims filed in the Chapter 11 Cases by Liberty.

44

106.     The Debtors resolved the informal objection of the U.S. government by amending Sections 12.8 of the Plan and adding Section 12.9 to the Plan, as reflected in the Confirmation Order. :

Section 12.8 of the Plan will be replaced in its entirety by the following::

12.8.   **Injunctions**.

As of the Effective Date, except as otherwise expressly provided in the Plan or the Confirmation Order, all Entities who have been, are, or may be Holders of Claims against or Interests in the Debtors shall be permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from:

(a)     taking any of the following actions against or affecting the Debtors, the Estates or the Assets, the Liquidating Trust or the Liquidating Trustee with respect to such Claims or Interests (other than actions brought to enforce any rights or obligations under the Plan or the Confirmation Order):

(i)     commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including all suits, actions, and proceedings that are pending as of the Effective Date, which must be withdrawn or dismissed with prejudice); *provided, however*, that the NLRB Actions may continue before the NLRB, and enforcement or review of any resultant order(s) of the NLRB may be sought in an appropriate United States Court of Appeals and the United States Supreme Court;

(ii)    enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order;

(iii)   creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance; and

(iv)    asserting any setoff, right of subrogation or recoupment of any kind; and

(b)     asserting, or otherwise proceeding against any of the Released Parties as to, any claims or Causes of Action released under sections 12.4.1. and 12.4.2. of the Plan;

*provided, however*, that such injunction shall not preclude ~~the United States of America,~~ any State, or any of their respective police or

45

regulatory agencies from enforcing their police or regulatory powers; and, *provided, further*, that except in connection with a properly filed proof of claim, the foregoing proviso does not permit ~~the United States of America,~~ any state, or any of their respective police or regulatory agencies from obtaining any monetary recovery from the Debtors, the Estates or the Assets, the Liquidating Trust or the Liquidating Trustee, or their respective property or interests in property with respect to any such (a) Claim or other debt or liability that is satisfied or deemed satisfied pursuant to Section 12.2 of the Plan or (b) Interest or other right of equity interest that is terminated or cancelled pursuant to the Plan, including, without limitation, any monetary claim or penalty in furtherance of a police or regulatory power. Such injunction shall extend to all successors of the Debtors and the respective properties and interests in property of all of the successors.

As reflected in the Confirmation Order, the Plan shall include a new Section 12.9 as follows:

12.9. **U.S. Government**.

The release and injunction provisions contained in the Plan and Confirmation Order are not intended and shall not be construed to bar the United States from, subsequent to the Effective Date, pursuing any police or regulatory action.

Accordingly, notwithstanding anything contained in the Plan or Confirmation Order to the contrary, including, but not limited to, Section 12.8 of the Plan, nothing in the Plan or Confirmation Order shall release, impair or otherwise preclude: (1) any liability to the United States of America, its agencies, departments, or agents (collectively, the "United States") that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code; (2) any Claim of the United States arising on or after the Effective Date; (3) any valid right of setoff or recoupment of the United States against any of the Debtors; or (4) any liability of the Debtors under environmental law to any Governmental Unit (as defined by section 101(27) of the Bankruptcy Code) as the owner or operator of property that such entity owns or operates after the Effective Date. Nor shall anything in this Confirmation Order or the Plan: (i) enjoin or otherwise bar the United States or any Governmental Unit from asserting or enforcing, outside the Bankruptcy Court, any liability described in the preceding sentence; or (ii) divest any court, commission, or tribunal of jurisdiction to determine whether any liabilities asserted by the United States or any Governmental Unit are discharged or otherwise barred by this

46

Confirmation Order, the Plan, or the Bankruptcy Code.

Moreover, nothing in the Confirmation Order or the Plan shall release any non-debtor, including any Released Parties, from any liability to the United States, including but not limited to any liabilities arising under the Internal Revenue Code, the environmental laws, or the criminal laws against the Released Parties, nor shall anything in this Confirmation Order or the Plan enjoin the United States from bringing any claim, suit, action or other proceeding against the Released Parties for any liability whatsoever.

Nothing contained in the Plan or Confirmation Order shall be deemed to determine the tax liability of any person or entity, including but not limited to the Debtors, nor shall the Plan or Confirmation Order be deemed to have determined the federal tax treatment of any item, distribution, or entity, including the federal tax consequences of this Plan, nor shall anything in this Plan or Confirmation Order be deemed to have conferred jurisdiction upon the Bankruptcy Court to make determinations as to federal tax liability and federal tax treatment except as provided under 11 U.S.C. § 505.

*[Remainder of page intentionally left blank.]*

## CONCLUSION

For all the reasons set forth herein, the Plan Proponents have established that the Plan satisfies all applicable elements of the Bankruptcy Code and respectfully submit that the Plan should be confirmed.

Dated: New York, New York
      June 6, 2014

*/s/ Lisa G. Beckerman*

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel:  (212) 872-1000
Fax:  (212) 872-1002
Lisa G. Beckerman
Rachel Ehrlich Albanese

*Counsel to the Debtors and Debtors in Possession*


*/s/ Patrick T. Collins*

FARRELL FRITZ, P.C.
Ted A. Berkowitz
Patrick T. Collins
Veronique A. Urban
1320 RXR Plaza
Uniondale, New York 11556-1320
Tel: (516) 227-0700
Fax: (516) 227-0777

*Counsel for the Official Committee of
Unsecured Creditors*