UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re                                                                               Chapter 11

Metro Affiliates, Inc., *et al.*                                     Case No. 13-13591 (SHL)

                                    Debtors                              (Jointly Administered)
----------------------------------------------------------------x


# MEMORANDUM OF DECISION DENYING DEBTORS' FOURTH & EIGHTH OMNIBUS OBJECTION TO CERTAIN PROOFS OF CLAIM FOR EMPLOYEE SEVERANCE & DEFERRED COMPENSATION

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the Debtors' Fourth Omnibus Objection to Certain Proofs of Claim (the "Objection") that seeks to expunge claims of nineteen former employees who request payment of severance under the Debtors' Discretionary Severance Program.[1] (ECF No. 1210). The Debtors submitted the declaration of David Carpenter, the Debtors' President and CEO, in support of the Objection. (the "Carp. Decl.") (ECF No. 1211). Seven individual claimants filed statements in opposition to the Objection, making various arguments as to why their claims should be allowed.[2] The Debtors' reply brief ("the Reply") (ECF No. 1338) was accompanied by the Second Declaration of David Carpenter (the "Second Carp. Decl.") (ECF No. 1340). In sum, the Debtors' position is that the Discretionary Severance Program did not create any legal obligation to pay severance. But for the reasons explained below, the Debtors' Fourth Omnibus Objection is overruled because there are unresolved issues of fact regarding whether the Debtors

---

[1] The total dollar amount of all nineteen claims is $156,911.24. *See* Objection, Ex. A, Sched. 1 (itemizing all claims to be included in the proposed order).

[2] These individuals are: Randy Russo (ECF No. 1303), Claim # 88; Gary Bernstein (ECF No. 1313), Claim # 39; Charles Butera (ECF No. 1311), Claim # 944; Patricia Berg (ECF No. 1304), Claim # 47; Deirdre Martuccio (ECF No. 1312), Claim # 288; Teresa Chalhoub (ECF No. 1338, Ex. A), Claim # 323; Marie Browand (ECF No. 1333), Claim # 49.

1

promised severance payments. Relatedly, the Court concludes the Debtors' Eighth Omnibus Objection (ECF No. 1215) as to a deferred compensation claim for Mr. Butera as a highly compensated employee is not properly before the Court at this time.

## BACKGROUND

The Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on November 4, 2013. At the first-day hearing on November 7, 2013, the Debtors requested the Court's approval to pay wages and honor other related employee obligations (the "Wages Motion") (ECF No. 14). The Wages Motion sought approval to continue the Debtors' Discretionary Severance Program ("the Program"):

> Upon the Debtors' termination of a non-union Employee, the Debtors' management typically considered such non-union Employee's eligibility to receive a "severance" payment, historically estimated (where appropriate) to be one week's pay for every two years of employment with the Debtors (the "Discretionary Severance Program"). To encourage Employees' loyalty during their chapter 11 cases . . . the Debtors seek authority to continue the Discretionary Severance Program for all non-union Employees . . . the Debtors are concerned that in the absence of the Discretionary Severance Program, Employees would have little incentive to not leave of their own accord. Accordingly, in connection with entry of the Final Order, the Debtors seek authority to continue the Discretionary Severance program in the ordinary course of business, to the extent the Debtors' management deems participation in such Program appropriate.

Wages Motion ¶¶ 37 – 38.[3] On December 2, 2013, the Court entered a final order approving the Wages Motion that authorized, but did not direct, the Debtors to continue participation in the

---

[3] The Court notes that the Schlenker Declaration in support of the Wages Motion was silent as to past practices and general terms of the Program. *See* Declaration of Nathan Schlenker (ECF No. 11). However, the Wages Motion noted:

> The Summary of the Debtors' various Employee Obligations provided herein is qualified entirely by the Debtors' official policies or other practices, programs or agreements, whether written or unwritten, evidencing an arrangement among the Debtors and their Employees (each, an "Official Policy").

Program. The parties appear to agree that the Program was not memorialized in any written document and was indeed discretionary. Second Carp. Decl. ¶¶ 3, 4; Hr'g Tr. 97:5-7, June 9, 2014 (ECF No. 1381).[4]

On June 9, 2014 the Court held a hearing on the Fourth Omnibus Objection. Messers Bernstein and Butera appeared and presented argument to the Court as to why their claims should not be expunged.

Of particular relevance to this objection, Mr. Bernstein and other claimants mentioned meetings with Nathan Schlenker (the Debtors' CFO) and other members of Debtors' senior management where severance was discussed, giving the claimants a belief that severance would be paid. *See, e.g.* Berg Letter (ECF No. 1304) ("I recall being in a meeting where Nat Schlenker . . . was addressing a group of us . . . at this meeting somebody raised the question of severance. Nat explained to us there is a severance plan and everyone in the room was entitled to it, but he couldn't pay us because his hands were tied . . ."); Martuccio Letter (ECF No. 1312) ("In December 2013 . . . there was a staff meeting in Nat Schlenker's office. At that meeting Nat mentioned that the company has a severance program in effect that offers employees 1 week pay for every 2 [years] of service. He did warn us that we would have to put a claim in and we may not get 100% of our claim and the court will determine what percentage we will get."); Bernstein Letter ¶¶ 2, 3 (ECF No. 1313) ("I was told by the Debtors' senior management that I was entitled to severance back in December 2013. . . . there was one meeting in particular that I recall and it was more of a staff meeting . . . I wanted Nathan to remove any uncertainty the staff

---

Wages Motion at 4, n.2. Both the severance policy and the deferred compensation policy are discussed in the Wages Motion.

[4]    As Mr. Bernstein, one of the claimants, pointed out at the hearing, "Now, [the Debtors] describe or they define the [Program], which we all know is not written, as discretion, management's discretion." Hr'g Tr. 97:5-7, June 9, 2014.

may have regarding the policy. What he told the staff was very consistent with what he told me. He explained the formula we should use in calculating it, he told us to file a claim and cautioned that our claim was in the same line as 1181's claim."); Chalhoub Letter (ECF No. 1338, Ex. A) ("I was told I was entitled to severance pay by my former manager.").[5] The Debtors nonetheless contend that there was no written severance policy and that neither Mr. Carpenter nor Mr. Schlenker made any promises of compensation. *See* Reply ¶ 6; Second Carp. Decl. ¶ 4.

## DISCUSSION

A proof of claim, if timely filed, constitutes *prima facie* evidence of the validity and amount of the claim. *See* Fed. R. Bankr. P. 3001(f). Furthermore, "a claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." *See* 11 U.S.C. § 502(a); *see also In re Residential Capital, LLC*, 507 B.R. 477, 490 (Bankr. S.D.N.Y. 2014) (citing *Sherman v. Novak (In re Reilly),* 245 B.R. 768, 773 (2d Cir. B.A.P. 2000)). The objecting party bears the initial burden of persuasion, and must provide "evidence equal in force to the *prima facie* case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *In re Arcapita Bank B.S.C.*,

---

[5] Mr. Bernstein also made equitable arguments about the Debtors' business judgment with respect to discretionary severance paid to certain other former employees. In particular, Mr. Bernstein identified a few individuals who received severance pay that did not comport with the formula the Debtors described in the Wages Motion. Hr'g Tr. 102:5–19, June 9, 2014. Mr. Bernstein also cited his assistance with the demands of a bankruptcy filing in his capacity as Assistant Controller. Bernstein Letter ¶¶ 2, 10. Indeed, Mr. Bernstein was under the impression that he would have a valid claim for severance, notwithstanding the possibility that he may not receive 100% of the claim. Bernstein Letter ¶ 5 ("[Mr. Carpenter's] response to us was he would like to pay us [severance] and we are entitled to one week for every two years worked, but he is not currently allowed to pay us. He encouraged us to file a claim. He told us since we were employees we should file it as priority claim. He also warned us not to expect to receive the full amount unless somehow there is a settlement with [Local Union] 1181.") At the hearing, Mr. Bernstein also explained:

> There was a meeting the day 1181 voted against . . . whatever. You know [Nathan Schlenker] told us, sorry, it doesn't look good, we're going to have to let you all go . . . probably in December. And at that point I go . . . we have a severance policy in place, could you tell everyone? Yes . . . but, you know, unless we can negotiate a deal with 1181, I'm not sure what percent you're going to get, good luck.

Hr'g Tr. 100:8–15, June 9, 2014.

2013 Bankr. LEXIS 4931, at *3 (Bankr. S.D.N.Y. Nov. 21, 2013) (citations omitted) (*aff'd* at 2014 U.S. Dist. LEXIS 59419, S.D.N.Y. Apr. 29, 2014).  If the objector succeeds in overcoming the *prima facie* effect given to the claim, the ultimate burden ordinarily remains on the claimant to prove the validity of the claim by a preponderance of the evidence.  *In re Oneida, Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009).  The Bankruptcy Code requires the court to disallow a claim, "to the extent, such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured."  11 U.S.C. § 502(b)(1).   Underlying state or federal law informs the Court as to the enforceability of a claim, and whether it meets the requirements of Section 502(b)(1).  *See In re Residential Capital, LLC*, 2014 Bankr. LEXIS 391, at *10 (Bankr. S.D.N.Y. Jan. 30, 2014).

       The Bankruptcy Code defines a "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured."  11 U.S.C. § 101(5)(A).  "Congress selected the broadest possible definition to ensure that "all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case."  *Morgan Olson, LLC v. Frederico* (*In re Grumman Olson Indus.*), 445 B.R. 243, 250 (Bankr. S.D.N.Y. 2011) (citations omitted).  However, this broad construction is not without limits as "the definition's reach is not infinite."  *PBGC v. Oneida Ltd.*, 562 F.3d 154, 156-67 (2d Cir. 2009).  Importantly, where there is no legal right to payment, there can be no claim.  *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991) ("right to payment [means] nothing more nor less than an enforceable obligation . . .") (citing *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 558 (1990)); *see also Bankr. Exch., Inc. v. Langlands*, 2009 U.S. Dist. LEXIS 84005 (W.D.N.Y. 2009).

5

**The Fourth Omnibus Objection**

Based on the facts currently before it, the Court must deny the Debtors' Fourth Omnibus Objection. The Program appears to be discretionary. *See, e.g., In re Wellman, Inc.*, 2009 Bankr. LEXIS 234 (Bankr. S.D.N.Y. Jan. 23, 2009) (bankruptcy court granted debtors' objections to employee severance claims because of the discretionary nature of the plan). But there is a factual question regarding whether any separate promise to pay severance was made so as to create a claim under Section 101(5) of the Bankruptcy Code. *See, e.g., In re Residential Capital, LLC,* 2014 Bankr. LEXIS 1023, at *16 (Bankr. S.D.N.Y. Mar 17, 2014) (finding that the Debtors did not meet its burden to refute claimants' breach of contract damages claims, noting "[a]t this stage of the proceeding, on the present record, it is unclear what really transpired here."); *In re Borders Group, Inc.*, 2011 Bankr. LEXIS 4935 (Bankr. S.D.N.Y. Dec 14, 2011) (court ordered an evidentiary hearing to resolve the debtors' objection to a former employee's claim for severance because there were unresolved issues of fact).

The Debtors offer no legal authority to support the proposition that an unwritten, discretionary severance policy absolutely absolves an employer from a separate promise to pay severance. In fact, there is some case law that appears to recognize a right to severance based on a promise or practice. *See*, *e.g., Giordano v. Thomson*, 438 F. Supp. 2d. 35, 41 ("this District has found that even an 'unpublished severance benefits package is cognizable under ERISA.'") (citation omitted)); *see also Schatzki v. Weiser Capital Mgmt., LLC*, 2012 U.S. Dist. LEXIS 6265, at *25 (S.D.N.Y. Jan. 19, 2012) ("New York law recognizes that [i]f the defendant engaged in a practice of making severance payments to nonunion employees on the termination of employment, and if such employees relied on this practice in accepting or continuing their employment, plaintiffs have a cause of action against the defendant.") (citation omitted).

6

Thus, the relevant question becomes whether any separate promise was actually made to pay severance. The Debtors maintain that no promise was ever made. *See* Second Carp. Decl. ¶ 4 ("At certain of these meetings, several employees inquired about the possibility of receiving Severance Payments. I never made any promises or guarantees to any employees regarding severance payments, and to the best of my knowledge, neither did Nathan Schlenker. . . . Instead, employees were told to submit a claim for severance, which would be handled as part of the bankruptcy claims process."). But Nathan Schlenker offered no testimony on this issue even though claimants cite to his statements as the basis for their claim of severance. In any event, the Court will overrule the objection given the conflicting evidence on this question. The parties should contact the Court to schedule further proceedings as to these claims.

**The Eighth Omnibus Objection**

For slightly different reasons, the Court cannot grant the Debtors' Eighth Omnibus Objection to the claim of Mr. Charles Butera (Claim # 950). The Eighth Omnibus Objection (ECF No. 1215) sought to expunge Employee Backpay Claims on the basis that those claims were covered by other proceedings, namely by the National Labor Relations Board (the "NLRB"). All of the claims in the Eighth Omnibus Objection were filed by former unionized employees of the Debtors, with the exception of Mr. Butera. At the original hearing on the Eighth Omnibus Objection on June 9, 2014, the Debtors adjourned the objection solely with respect to Mr. Butera because he was not, in fact, a union worker—a point Mr. Butera raised in his letter in opposition to the objection. *See* ECF No. 1311 at 2; Hr'g Tr. 82:8-10, June 9, 2014. Thus, all parties agreed that Mr. Butera's claim did not fall within the ambit of the original

Eighth Omnibus Objection because it was not a claim by a union employee that was being addressed in proceedings at the NLRB.[6]

The Eighth Omnibus Objection was put on the calendar for the hearing scheduled for July 10, 2014 to address Mr. Butera's claim. Three days before the hearing, the Debtors filed a Reply in Support of Debtors' Objection to Certain Proofs of Claim (the "Butera Reply") (ECF No. 1446), which addressed Mr. Butera's claim. The arguments raised in the Butera Reply were all new; that is to say, they had not been raised in Debtors' original claim objection. The Butera Reply reframed the issue by explaining that Mr. Butera's claim is one for deferred compensation as a Highly Compensated Employee ("HCE"). The Debtors went on to argue that Mr. Butera is not eligible for the HCE discretionary retirement benefit because "[t]he Debtors did not seek or receive authority to pay the Discretionary HCE benefits to any [HCEs other than the CEO and CFO]." Reply ¶ 3. The Butera Reply also noted the discretionary nature of the compensation program for HCEs, implying that there is no obligation to pay these benefits. *Id.* ¶ 2.

It is well-settled law, however, that arguments may not be made for the first time in a reply brief. *Urguhart v. Metropolitan Transportation Authority,* 975 F. Supp. 2d 320, 331 at n. 4

---

[6] At the Hearing on June 9, 2014, counsel for the Debtors stated, for example:

> I have not addressed Mr. Butera's issue, which is different from the other four. . . . Mr. Butera did file a response to this objection, in which he clarified that he is a nonunion former employee. His claim is actually a claim for deferred compensation back pay, which is a different issue that we have been discussing. And if your Honor will permit, the debtors would like to adjourn the objection as to his particular claim and address it separately. Hr'g Tr. 79:12-14; 82:3-10, June 9, 2014.

The Court agreed to adjourn the hearing, but nonetheless confirmed that the issues raised in the Eighth Omnibus Objection generally did not pertain to Mr. Butera:

> Mr. Butera, what I hear them saying is that the issue that was really raised, this omnibus objection, is not your issue. So your claim was flagged and put in this bucket, but it's not really in this bucket at all. So that rather than fight about it now, when the debtors are going to take a look at it and figure out what their position is, it makes sense to adjourn the hearing to another date and for you all to have discussions. Hr'g Tr. 82:13-20, June 9, 2014

8

(S.D.N.Y. 2013); *see also Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1999). We are in precisely such a posture now. Mr. Butera's opposition to the Eighth Omnibus Objection addressed the defect already conceded by the Debtors—that he was a non-union employee and thus had no proceeding before the NLRB that covered his claim. While Mr. Butera was present in Court at the hearing on July 10th, it is unclear whether he understood that the new arguments in the Butera Reply were now being presented as the basis for expunging his claim. Given that Mr. Butera is representing himself *pro se* and has not had a formal opportunity to respond to these new arguments, the Court will treat the Butera Reply as a new objection and will schedule a deadline for Mr. Butera to file any written response to the new arguments raised by Debtors' reply brief.

As a related matter, the Court notes that the substance of the argument in the Butera Reply appears to raise an issue similar to the issue raised by Debtors' Fourth Omnibus Objection: namely, whether the Debtors made any promise to provide the benefit in question to the employee. If that is the case, then the Court's ruling on the Fourth Omnibus Objection may apply in equal force to Mr. Butera's claim, meaning that evidentiary proceedings would be necessary for the claim to be resolved. It could be, of course, that Mr. Butera's claim is factually or legally distinct from those in the Fourth Omnibus Objection.[7] In the interest of efficiency, the Debtors should assess their position as to Mr. Butera's claim in light of the Court's ruling on the Fourth Omnibus Objection. They should do so before any further papers are filed so that all parties can consider whether it makes sense to combine any further proceedings for both the Fourth Omnibus Objection and the objection to Mr. Butera's claim. Debtors should inform the Court and Mr. Butera of their position in writing by August 18, 2014. If the Debtors still wish to

---

[7] At the hearing, for example, Mr. Butera argued that he did not "resign" from his position notwithstanding any particular language he used in his pleadings. Hr'g Tr. 108:5–8; 108:13–14, June 9, 2014.

pursue their current objection to Mr. Butera's claim, then Mr. Butera shall filed any written response to the issues raised by Debtors' Reply on or before September 8, 2014. The matter will then be scheduled for a hearing. Any response filed by Mr. Butera should focus on the basis for his claim for deferred compensation as a HCE, including whether there were any written or oral promises by the Debtors to pay such compensation.

## CONCLUSION

For all of the reasons set forth above, the Court denies the Debtors' Fourth Omnibus Objection and adjourns the Eighth Omnibus Objection for further proceedings. In light of this Memorandum of Decision, the hearing scheduled on these claim objections for August 4, 2014 at 11:00 am is cancelled.

Dated: New York, New York
       July 31, 2014

                                        */s/ Sean H. Lane*
                                        UNITED STATES BANKRUPTCY JUDGE