**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x

In re                                           Chapter 11

METRO AFFILIATES, INC., et al.,         Case No. 13-13591 (SHL)

                          Debtors.         (Jointly Administered)

----------------------------------------------------------------x

## MODIFIED BENCH RULING ON MOTION TO REJECT STIPULATION AND MEMORANDUM OF UNDERSTANDING BETWEEN LIBERTY INSURANCE AND THE LIQUIDATING TRUSTEE AND MOTION FOR AN ORDER TO CLARIFY THE <u>CONFIRMED PLAN</u>

A P P E A R A N C E S :

FARRELL FRITZ, P.C.
*Attorneys for Metro Affiliates Liquidating Trust*
1320 RXR Plaza
Uniondale, New York 11556
     By:   Patrick T. Collins, Esq.

GOODING, CHOATE HALL & STEWART
*Attorneys for Liberty Mutual Insurance Company*
Two International Place
Boston, Massachusetts 02110
     By:   Douglas R. Gooding, Esq.

MCGRAIL & BENSINGER, LLP
*Attorneys for Liberty Mutual Insurance Company*
888-C 8th Avenue #107
New York, New York 10019
     By:   David C. McGrail, Esq.

SCHRIER SHAYNE KOENIG SAMBERG & RYNE
*Attorneys for Kathleen McCarthy*
825 East Gate Boulevard, Suite 320
Garden City, New York 11530
     By:   Richard E. Schrier, Esq.

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court are two motions by Kathleen McCarthy.  The first is a motion for an order rejecting a stipulation and memorandum of understanding (the "MOU") between the liquidating trustee and Liberty Mutual Insurance Company regarding claims-handling matters [ECF No. 1814]; and second, a cross-motion for an order seeking to clarify the confirmed plan [ECF No. 1540].[1]

In the two motions, the movant seeks to clarify how certain collateral held by Liberty will be applied as to insured claims covered by Class 6 of the confirmed plan in this case.  That class includes claims such as the movant's claim, which arises out of a motor vehicle accident allegedly involving individuals employed by the Debtors and which may be entitled to insurance coverage by Liberty.  The movant further requests the Court issue an order requiring that the collateral be used to pay, on a pro rata basis, all insured claims and the cost of coverage, and that the MOU be rejected because it does not do so.

The background of this case is straightforward.  The movant has alleged a personal injury claim against the Debtors arising out of an accident that occurred prior to the petition date.  Prior to the petition date, Liberty had issued certain workers' compensation liability, auto liability, and general liability insurance policies to the Debtors.  Among the insurance policies issued by the Debtors was a policy that the movant asserts provides coverage for loss of damages arising out of the accident.  A copy of the policy is attached as Exhibit A to the Declaration of Patrick Collins. [ECF No. 1731-1].

The policy provides coverage of $1 million per accident subject to a $500,000 deductible

---

[1]      This written decision memorializes the Court's bench ruling at a hearing on January 7, 2016.  Because of its origins as a bench ruling, this decision has a more conversational tone.

payable by the Debtors.  *See* Exhibit A, "Deductible Endorsement Automobile Coverage" at ¶ 1. As a result, Liberty is obligated to pay claims covered under the policy only to the extent that such loss, damages or expenses exceed the deductible.  Pursuant to the policy's deductible endorsement, Liberty "[h]as the right but not the duty to advance any part or all of the deductible amount."  *See id.* at ¶ 5.

Liberty has informed the liquidating trustee that it intends to pay the deductible portion of claims arising under the policy and other automobile liability insurance issued by Liberty to the Debtors only to the extent of applicable minimum amounts of liability insurance that the Debtors were required to maintain under applicable financial responsibility laws in effect in the states in which they operated their businesses.  In some states in which the Debtors operated, including New York and New Jersey, the mandated minimum auto liability insurance amount is significantly lower than the $500,000 deductible amount.  In this case, the parties refer to the minimum amount in New York as $25,000.  Both the liquidating trustee and Liberty understand that Liberty intends to obtain reimbursement from the collateral for the deductible amounts Liberty pays to claimants as well as the allocated loss adjustment expense associated with such claims.

The collateral requires a more detailed explanation.  As of the effective date, Liberty was the beneficiary under letters of credit, held cash, and/or letter of credit proceeds in the approximate amount of $16,200,00.00.  That collateral has served as security for the Debtors' ongoing payment obligations to Liberty under automobile liability and workers' compensation insurance policies, including the policy issued by Liberty to the Debtors that is the subject of the potential coverage for the movant.  The collateral is held by Liberty under the terms and conditions of the applicable insurance collateral agreements as security for the Debtors'

performance of its financial obligations under the insurance policy.  It is subject to being

returned or refunded to the extent not used to satisfy obligations of the Debtors to Liberty.  The

parties are not in agreement as to the liquidating trustee's rights to obtain the return of the

remaining collateral.  But it has been the Debtors' consistent position throughout the case—and it

is now the liquidating trust's position—that the money should come back to the estate once

Liberty has been paid.  But there are some reservations of rights by other parties as to any

remaining collateral.

The first amended joint Chapter 11 plan of liquidation (the "Plan") was confirmed in

these cases.  Under the Plan, holders of insured claims, like the movant, are permitted to proceed

with litigation to liquidate their claims and seek recovery from applicable insurance policies

maintained by the Debtors.  *See* First Amended Joint Chapter 11 Plan § 5.1.6 [ECF No. 1372-1].

Section 5.1.6(b) of the Plan provides, however, that there may be "no applicable or available

insurance policies or proceeds from applicable or available insurance policies [may be]

exhausted or are otherwise insufficient to pay in full a Holder's recovery . . . ."  *See id.*  If holders

of allowed insurance claims do not obtain a full recovery from insurance proceeds, the Plan

provides that they have an allowed general unsecured claim to the extent of a shortfall, and it

puts them in the same position as Class 5 unsecured claims.

The Order confirming the Plan provides that the Plan does not impair the rights or

obligations under the insurance policies between Liberty and the Debtors.  It is insurance neutral.

Paragraph 6(d) of the confirmation order states in relevant part, "The rights and obligations of

the insureds and the insurers shall be determined under the Liberty Mutual Insurance

Agreements, including all terms, conditions, limitations and exclusions thereof, which shall

remain in full force and effect, and in any applicable non-bankruptcy law."  [ECF No. 1372].

4

The liquidating trust offers a hypothetical that is helpful to explain how coverage would work considering all these circumstances.  The liquidating trustee's hypothetical posits a claimant who obtains a judgment in the amount of $1 million, where the requirement under the applicable financial responsibility law is $100,000, and the Debtors' deductible is $500,000.  In that case, the liquidating trustee contends that the claimant would receive $100,000 dollars in cash from Liberty, and Liberty would obtain reimbursement for such amount in related defense costs from the collateral.  The claimant also would have an allowed general unsecured claim in the bankruptcy case in the amount of $400,000, and Liberty would pay the claimant an additional $500,000 representing the amount in excess of the deductible.

So based on this background, the Court reaches the following conclusions on the two motions before it.

First, the Court concludes that the Plan does not require clarification.  While it is certainly not simple, the Plan clearly provides that insured claims in Class 6 may proceed to liquidate their claims and recover against any applicable insurance.  The Plan further provides that to the extent that these claimants are unable to fully recover the amount of their claims in that fashion, they shall have an unsecured claim in Class 5 for any deficiency.  The Plan also makes clear that the rights of insureds and insurers under Liberty policies are unaffected by the Plan.

What may be less clear to the movant, and perhaps others, is how the Liberty insurance policy operates given the Plan and the Debtors' insurance coverage.  And it is for that reason, apparently, that the liquidating trustee and Liberty entered into the MOU to make clear how insurance claims would be handled and to avoid disputes and the needless waste of the collateral in litigating that issue.  The MOU and the extensive briefing by the parties on this issue do, in

fact, shed great light as to how these claims will be addressed.

The evidence makes clear that the collateral is held by Liberty as a guarantee of Debtors' financial obligations under the policy.  Liberty was entitled to draw upon the full amount of the collateral once the Debtors did not refresh the letters of credit as required under the agreements, and in fact Liberty did draw upon the full amount of the collateral.

Under the applicable agreements, it is also clear that Liberty has the right, but not the obligation, to pay out deductible amounts owed by the Debtor.  This allows Liberty to pay out statutory minimum coverage amounts, even though such amounts would appear to be the obligation of the Debtors, which are self-insured up to the first $500,000.  Liberty can then recover these sums in the collateral, which exists, after all, only to guarantee the Debtors' performance of its financial obligations.

All those facts have been hashed out in detail in the papers and are supported by the MOU and the evidence in the record before the Court.  To the extent the movant seeks clarification of how the Plan and applicable insurance coverage work together as to its insured claim, therefore, the Court concludes that such clarification has been provided by the briefing on these motions as well as the MOU.  To the extent, however, that the movant disagrees with these explanations and posits another reading of the Plan and how these various agreements work together, the Court rejects the movant's position as unsupported by the applicable agreements and the applicable law.

The Court further concludes that the movant has not identified anything in the MOU that is inconsistent with the Plan, or the pre-petition agreements entered into by the Debtors and Liberty.

The movant also has not identified anything about the Plan, the MOU, or the pre-petition

insurance agreements that violate applicable law.  While the movant did not raise this issue at

oral argument, this issue appears to be raised in its moving papers, and therefore the Court will

address it.

The applicable law here is New York Insurance Law § 3420(f)(1), which requires any

vehicle that is principally garaged for use in New York State to maintain a minimum amount of

liability coverage of $25,000 for bodily injury for a person involved in an accident in New York

State.  The movant's papers appear to allege there has been a failure to pay the statutory

minimum amount or that there is a prospect that such a failure will occur.  But both the

liquidating trust and Liberty represent that such minimums will be paid by Liberty, which will

then recover those sums from the collateral, as Liberty is permitted to do so under its agreements

with the Debtors.  Moreover, the movant has not identified any legal authority in her contention

that the treatment of personal injury claims like hers in the Plan and the MOU is somehow

against New York public policy.

Similarly, the movant has not identified any violation of New York public policy by

virtue of the unremarkable fact the Debtor is itself insured for the first $500,000 of loss, and that

Liberty provides coverage beyond that amount.  And that is the contractual arrangement that is

undisturbed by the Plan.  The movant also has not identified any violation in New York public

policy in connection with the Debtor and Liberty's use of letters of credit to serve as a guarantee

of financial performance, a very common financial device.

The cases cited by the movant to support its argument are inapplicable.  For example, in

*Braithewaite v. Progressive Casualty Insurance Co.*, 7 N.Y.S.3d 234 (App. Div. 2d Dep't 2015),

the plaintiff was a New York resident who was a passenger in a car registered and insured in

Pennsylvania with a $300,000 policy covering bodily injury.  *Id.* at 235.  The insurance company

7

denied coverage to the plaintiff, relying on the uninsured motor vehicle exclusion in its policy. *See id.* The court determined that such an exclusion, however, was invalid under New York insurance law. The court further concluded that since the policy did not contain a term expressly limiting coverage to the statutory minimum of $25,000 under New York law, the court refused to read such a limit into the policy. *See id.* at 236. Therefore, the insurer was liable for coverage up to its stated amount of $300,000. *See id.*

Of the other two cases cited by the movant, *Royal Indemnity Co. v. Providence Washington Insurance Co.*, 92 N.Y.2d 653 (1998) and *Connecticut Indemnity Co. v. Hines*, 837 N.Y.S.2d 183 (App. Div. 2d Dep't 2007), both similarly deal with exclusions under insurance policies that were deemed to be invalid under New York's public policy. As there are no such exclusions at issue here, these cases are inapplicable.

And again, no party has identified any provision that would be somehow invalid under New York public policy, which further distinguishes these cases.

In her reply, the movant raises a new argument based on novation theory. This novation theory was the primary argument relied upon by the movant at oral argument. But as the movant's novation theory argument was raised for the first time in its reply brief, it need not be considered by this Court. *See United States v. Yousef*, 327 F.3d 56, 115 (2d Cir. 2003); *see also Connecticut Bar Ass'n v. United States*, 620 F.3d 81, 91 n.13 (2d Cir. 2010).

In any event, the Court finds the argument to be without merit. The movant contends that Liberty "now having possession of the funds that were to be utilized for the payment of claims made and expenses occurred [sic] in connection with those claims, now stands in the shoes of Atlantic and has assumed Atlantics [sic] obligation to defend and pay claims up to the $16.2 million it drew down from the security fund." Reply Memorandum at ¶ 19 [ECF No. 1904].

The movant thus argues that a novation occurs when, upon the drawdown of the entire security fund, Liberty replaced Debtor Atlantic in its capacity as the obligated party to pay the obligations of the insured Atlantic. *See id.* at ¶ 22. To support this argument, the movant cites New York State Insurance Department Opinion number 08-07-15, which discusses the issues of assumption relating to insurance and a novation.

Under applicable law, "[a] novation may be implied or inferred from all surrounding circumstances." *In re Chateaugay Corp.*, 116 B.R. 887, 907 (Bankr. S.D.N.Y. 1990). Nevertheless, "[b]ecause a novation has the effect of extinguishing the prior contract between the parties, the existence of a novation 'must never be presumed.'" *In re Cohen*, 422 B.R. 350, 373 (E.D.N.Y. 2010) (citing *Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*, 736 F. Supp. 1281, 1284 (S.D.N.Y. 1990)). "The party asserting the existence of a novation has the burden of proving that the later agreement was specifically intended as a complete substitute for the prior agreements." *In re Chateaugay*, 116 B.R. at 907.

Under New York law, a novation requires several elements: "(1) a previously valid obligation; (2) agreement of all parties to a new contract; (3) extinguishment of the old contract; and (4) a valid new contract." *In re Balfour MacLaine Int'l*, 85 F.3d 68, 82–83 (2d Cir. 1996) (citation omitted).

The movant here argues four things. First, that a novation can be inferred because Atlantic had a valid obligation to pay for losses up to $500,000 per claim. Second, the cross-collateralization agreement between Atlantic and Liberty was an agreement granting Liberty the right to extinguish Atlantic's obligation to pay for litigation defense costs, as well as losses up to $500,000, should Atlantic fail to replenish security. Third, that Liberty effectively extinguished Atlantic's obligation to pay pending injury claims by drawing on the security fund. And fourth,

by drawing down the security fund, Liberty stands in the shoes of Atlantic as a self-insurer up to

$16.2 million.  *See* Reply Memorandum ¶ 23.

Considering all of the arguments in the papers and in oral argument, however, the Court

concludes that the movant has failed to meet its burden of establishing that a novation has

occurred.  More specifically, the movant has failed to establish that there is an agreement of all

parties to a new contract, that the old contract was extinguished, or that a new contract was, in

fact, created.  *See In re Balfour*, 65 F.3d at 82–83.  Indeed, all the events relied upon by the

movant to establish a novation were events consistent with the agreements already in place

between Liberty and the Debtors.  More specifically, the cross-collateralization agreement

between Atlantic and Liberty provides that Liberty has the right to draw down on the full amount

of the existing letters of credit if there is a failure to provide replacement for any expired letters

of credit.  There is no dispute that this is exactly what happened here.  And as Liberty already

had the right to draw down the full amount of the letters of credit under the existing agreement,

its doing so did not result in a novation to extinguish the Debtors' obligation to pay the

deductible or to place Liberty in Atlantic's shoes as insured for the first $500,000 of loss.

Indeed, the movant seeks to infer a novation by presumption, which is not permitted.  *See

In re Cohen*, 422 B.R. at 373.  The movant actually cites to nothing in the applicable agreements

or applicable law that supports a novation here.  Accordingly, no novation has occurred, and

Liberty is not responsible for Atlantic's obligation to pay the deductible.

The Court has two final comments.  First, the Court agrees with the liquidating trustee

that the movant's attempt to stake ownership over the collateral solely for the benefit of the

insured unsecured claims is improper under the Plan and applicable bankruptcy law.  It is clear

that, while the collateral is not currently property of the Debtors *per se*, given the applicable law

10

and letters of credit, the Debtor retains a residual property interest in seeking the return of any

unused portions of the collateral after the lease obligations have been satisfied.  Indeed, the

estate's views on this issue have been expressed consistently before this Court by counsel for the

Debtors well before any plan was ever confirmed.

Moreover, there is nothing in the Plan that provides preferential treatment of insured

unsecured claims against the Debtor as compared to other unsecured claims.  The Plan treats

them the same when it comes to payments from the estate.  The fact that the Plan allows insured

unsecured claims to proceed with their lawsuits to liquidate their claims and recover on any

available insurance from third parties, such as Liberty, does not somehow change how claims

against the Debtors should be treated.

Second, the Court understands that the movant's injuries in the accident were very

serious.  Unfortunately, there is often very bad news to deliver in bankruptcy cases.  And here,

this case is no different.  Indeed, there is very likely a very small recovery from the estate—

rather than insurance—for unsecured creditors' claims like the movant.  While this is

unfortunate, it is unavoidable when you apply the applicable law, the terms of the Plan, and the

facts of this case.

In conclusion, and having considered all the arguments raised by the movant and the

record before it, the Court denies the motions.


Dated: New York, New York
       February 3, 2016

                                    _/s/ Sean H. Lane_____
                                    UNITED STATES BANKRUPTCY JUDGE